Bannon, Respondent, vs. Insurance Company of North America, Appellant.

*September 4 — September 23, 1902.*

*Appeal: Setting aside verdict: Right to open and close: Discretion: Fire insurance: Special verdict: Duplicity in questions: Instructions to jury: Fraud avoiding policy: Judgment in consolidated action.*

1. An order of the trial court refusing to set aside a verdict or special finding of a jury will be reversed only when there is no evidence to sustain the verdict or finding, or where the same

Bannon v. Insurance Co. of North America, 115 Wis. 250.

is against both the great weight of the evidence and all the reasonable probabilities.

2. In a consolidated action against several insurance companies, most of the defendants admitted the allegations of the complaint and set up affirmative defenses; but two of the answers contained certain denials, so that technically, on the pleadings, plaintiff had the right to open and close. At the opening of the trial the matters denied were admitted, but no offer was made to amend the answers. After the evidence was mostly in, defendants moved to amend the answers so as to withdraw said denials, and renewed their application for the right to open and close. *Held*, that it was not an abuse of discretion to deny such application on the ground that the admissions had merely taken the place of proof and that the amendment should not be permitted because intended merely to obtain the advantage of opening and closing.

3. Even had the answers been formally amended, the refusal to give defendants the opening and closing would not justify a reversal unless it appeared that they were prejudiced thereby.

4. In an action upon insurance policies a question submitted for special verdict, asking whether plaintiff knowingly made false entries in his books as to the quantity of oil *or* flax seed on hand, was not double,—the inquiry being in reality the single one whether plaintiff made false entries as to his stock.

5. In an action upon insurance policies where the answers alleged wilful destruction of the property by plaintiff, an instruction that "fraud is never presumed, but must be clearly proved," was not erroneous. *Wheeler v. Konst,* 46 Wis. 398, distinguished.

6. Under the clause avoiding the standard fire policy "in case of any fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof," intentional falsification of books or statements showing a greater amount of property on hand than the fact was, and submission of such books or statements to the adjusters as correct, are sufficient to avoid the policy, regardless of whether damage actually resulted to the insurance company.

7. Where separate actions against one company on three policies were consolidated for trial with actions against other companies, a single judgment against the company first mentioned for the aggregate amount due on the three policies was proper.

APPEAL from a judgment of the superior court of Douglas county: CHAS. SMITH, Judge. *Affirmed.*

This was a consolidated action to recover upon a number of

fire insurance policies. The plaintiff owned and operated a linseed oil mill at Grand Forks, North Dakota. On the 31st of May, 1901, the mill was destroyed by fire. At that time the mill and its contents were insured in fourteen different insurance companies, the aggregate of such insurance amounting to more than $24,000. On June 7, 1901, the losses were adjusted under the terms of the policies, but after such adjustment the insurance companies refused to pay, and twenty-one actions were commenced upon as many policies against the fourteen insurance companies aforesaid, which actions were afterwards consolidated for the purpose of trial, under sec. 2609a, Stats. 1898. At the commencement of the trial one of said actions against the Phoenix Insurance Company was announced to have been settled and discontinued, and the trial went on as to all of the other actions. The answers of all of the defendant companies except three admitted the issue of the policies and the adjustment of the losses, and set up three affirmative defenses, viz.: (1) Fraud in the proofs of loss; (2) wilful destruction of the property by the plaintiff; (3) that the property was a manufacturing establishment, and had wholly ceased operation, without the consent of the defendant, for more than ten days before the fire. The jury returned a special verdict as follows:

"(1) Was the plaintiff, on May 31, 1901, the owner of a linseed oil mill located at Grand Forks, North Dakota, together with the machinery, engines and boilers, office furniture and fixtures, and a stock of flax seeds of all kinds, oil cake, linseed oil, manufactured and in process of manufacture, barrels, etc., all contained therein, and covered by the several insurance policies mentioned in the complaints herein? *Answer by the court:* Yes.

"(2) Was the property described in question 1, on May 31, 1901, destroyed or damaged by fire? *Answer by the court:* Yes.

"(3) What was the total amount of insurance held by the plaintiff on said property at the time of the fire, covering (a) Buildings. *Answer by the court:* $9,000.00. (b) Ma-

chinery, including engines and boilers, office furniture and fixtures? *Answer by the court:* $7,265.00. (c) Stock, consisting of flax and seeds of all kinds, oil cakes, linseed oil, manufactured and in process of manufacture, barrels, etc.? *Answer by the court:* $8,000.00.

"(4) Was the amount of plaintiff's loss and damage by reason of said fire adjusted by and between the plaintiff and the defendants on or about June 7, 1901? *Answer by the court:* Yes.

"(5) By and under such adjustment, what sums were the defendants, respectively, to pay under the several policies mentioned in the complaints herein? *Answer by the court:*

| Name of Co. | No. of Policy. | Amt. All'd. |
|---|---|---|
| North America | 1,308 | $1,065 45 |
| " " | 1,307 | 717 20 |
| " " | 1,315 | 1,000 00 |

[Other companies omitted because immaterial on this appeal.]

"(6) What quantity of oil cake belonging to the plaintiff was on hand in his mill at the time of the fire, May 31, 1901? *A.* 24,205 pounds. (By the court.)

"(7) What quantity of screenings belonging to the plaintiff was on hand in the mill at the time of the fire? *A.* 24,000. (By the court.)

"(8) What quantity of flaxseed belonging to the plaintiff was in the mill at the time of the fire? *A.* 1,795 bushels.

"(9) What quantity of linseed oil belonging to the plaintiff was on hand in the mill at the time of the fire? *A.* 13,404 gallons.

"(10) Did the plaintiff's books of accounts contain false entries regarding the quantity of linseed oil or flax on hand in his mill at the time of the fire? *A.* Yes.

"(11) Did the plaintiff knowingly cause false entries to be made in his books of accounts regarding the quantity of linseed oil or flax on hand in his mill during the month of May, 1901? *A.* No.

"(12) If you answer 'Yes' to question 10, did such false entries show a greater quantity of linseed oil on hand in plaintiff's mill at the time of the fire than was actually there? *A.* Yes.

"(13) If your answer to question 10 is 'Yes,' then did the plaintiff cause the account showing such false entries to be submitted to the adjusters who adjusted his loss on said stock at the time of the adjustment of such loss? *A.* Yes.

"(14) Did the plaintiff know that such accounts contained false entries regarding the quantity of linseed oil or flax on hand when he submitted such accounts to said adjusters? *A.* No.

"(15) If your answer to question 10 is 'Yes,' then were such false entries intended by the plaintiff to deceive said adjusters with regard to the quantity of oil or flax on hand at the time of the fire? *A.* No.

"(16) If your answer to question 10 is 'Yes,' then was the making of such false entries and the submission thereof to such adjusters such an act as calculated to influence said adjusters to allow the plaintiff a greater amount for the loss of his stock of linseed oil and flax than he was entitled to recover? *A.* No.

"(17) If your answer to question 10 is 'Yes,' then did such false entries influence such adjusters to allow the plaintiff a greater amount for the destruction of his linseed oil or flax than he was entitled to recover? *A.* No.

"(18) Did the plaintiff submit a statement, of which Exhibit 1 is a copy, to said adjusters, as a statement of the amount of his stock which was destroyed by fire? *A.* Yes.

"(19) Did such statement show a greater amount of stock to have been destroyed by fire than was actually destroyed? *A.* Yes.

"(20) Did the plaintiff know, at the time he submitted such statement, that it showed a greater amount of stock to have been destroyed than was actually destroyed? *A.* No.

"(21) Did the plaintiff, by submitting to said adjusters the said statement, intend to deceive said adjusters with regard to the amount of his stock that was destroyed by fire? *A.* No.

"(22) Did the representatives of the defendants, at and prior to the adjustment of the loss, have full knowledge of the fact that the statement of which Exhibit 1 is a copy showed a greater amount of stock to have been destroyed by fire than was actually destroyed, and consider such fact in making such adjustment? *A.* Yes.

"(23) Did the representatives of the defendants, at or prior

to the time of making the adjustment, have full knowledge of all the false entries in plaintiff's books of accounts, and consider the falsity of the same in making such adjustment? A. Yes.

"(24) Was the submission of the statement, of which Exhibit 1 is a copy, by the plaintiff to said adjusters, such an act as was calculated to induce said adjusters to allow the plaintiff a greater amount for the destruction of his stock than he was entitled to? A. No.

"(25) Was the actual damage to the stock of linseed oil and flax equal to the amount allowed in such adjustment? A. Yes.

"(26) Did the plaintiff's linseed oil mill cease to operate for more than ten consecutive days immediately preceding the fire? A. No.

"(27) Did the plaintiff wilfully cause the destruction of his mill and the contents thereof by fire? A. No."

From judgment entered upon this verdict for plaintiff, the *Insurance Company of North America* appeals.

For the appellant there was a brief by *W. P. Crawford* and *Brown & Kerr,* and oral argument by *F. V. Brown.*

For the respondent there was a brief by *Ross, Dwyer & Hile,* and oral argument by *W. D. Dwyer.*

WINSLOW, J.   It was strenuously contended by the appellant's counsel in their brief as well as in their oral arguments that many of the findings contained in the special verdict were contrary to the "great weight of the evidence," and that this court should for that reason reverse the order of the trial court refusing to set aside such answers.   The language used by counsel indicates a misapprehension of the rule which controls the action of this court under such circumstances.   When a trial court has refused to set aside a verdict or special finding of a jury, this court will not reverse such order merely because, in its opinion, the verdict is against the preponderance or "great weight" of the evidence; the deference which the court owes to the trial courts forbids such action.   This court will reverse such a ruling only when there is no evidence

to sustain the verdict or its finding, or where, though there be some evidence in its support, still the great weight of the evidence is against it, *and* that weight is so reenforced by all the reasonable probabilities and inferences that it becomes overwhelming. This is substantially the rule laid down by a number of authorities culminating in the cases of *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80 N. W. 467, and *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57. The great weight of evidence and all the reasonable probabilities must conjoin against the verdict in order to make the situation such that this court will interfere. As the rule is stated in the opinion in the *Wunderlich Case,* near the bottom of page 387, 104 Wis., page 469, 80 N. W., it might perhaps be inferred that, if either state of facts appeared, the rule would be satisfied, but such was not the intention of the court in that case. As said on the preceding page in that same case, it is when all the reasonable probabilities *and* the overwhelming weight of the testimony is against the verdict that it cannot stand. The defendant therefore must establish both facts in order to be successful in its attack upon the findings of the jury. As to the principal findings upon which this attack is made, namely, the finding as to the quantity of stock on hand at the time of the fire, and the findings as to the alleged fraudulent acts of the plaintiff prior to the adjustment, it must be sufficient to say that, after a careful examination of the testimony, which is very voluminous, we are unable to say that the answers are unsupported by any credible evidence, or are so far against the great weight of the evidence and all reasonable probabilities as to justify this court in reversing the action of the trial court.

The questions in the case which the parties litigated sharply upon the trial were questions of fact, rather than questions of law. These questions were settled by the verdict adversely to the appellant, and it is manifest that, if they have been so settled without prejudicial error, the judgment must be af-

firmed, provided all the material questions in the case are covered. We shall examine the various errors claimed so far as seems necessary.

1. The appellant claimed the right to open and close the argument to the jury under Circuit Court Rule XXIII, which provides that "the party having the affirmative shall be entitled to the opening and closing argument." The court denied the appellant this privilege, and exception was taken to the ruling, and it is now claimed to be prejudicial error. The initial question is whether the defendants had "the affirmative" of the issue. This is a question to be determined by the pleadings. In all but two of the answers there is no question but that the material allegations of the complaint are so far admitted that the plaintiff would be entitled to judgment in the absence of proof by the defendants of their affirmative defenses. Two of the insurance companies, however, had put in answers which contained denials putting in issue the allegations of the complaint touching the adjustment of the loss. As all of the issues are tried at once, and as it is manifestly impossible to give the plaintiff the opening and close as to some of the defendants and not as to others, we think that technically, upon the pleadings, the plaintiff had the right to open and close, because as to some of the parties he had to introduce evidence in order to entitle himself to a verdict. But, in order to obviate this point, the defendants' attorneys admitted at the opening of the trial, on behalf of the two companies named, that the adjustment had been made. They did not, however, offer at that time to amend the answers in that behalf. The court deferred the decision of the question, and, after the trial had progressed several days, and the evidence had been mostly put in, the defendants' counsel moved to amend the answers by admitting the fact of the making of the adjustment and withdrawing the denials, and renewed their application for the right to open and close. The court held, however, that technically, under the pleadings, the plaintiff

had the affirmative at the opening of the trial; that the admission on the part of the defendants did not affect the question, but simply took the place of proof; and that he would not permit the amendments offered, as they simply were intended to obtain the advantage of the right to open and close. This ruling was a discretionary one, and we cannot say there was an abuse of discretion. However, had the answers been formally amended, it would not have been necessarily reversible error to refuse the defendants the opening and close. It must appear that the appellant was prejudiced by the ruling in order to justify a reversal on that account. *Parker v. Kelly,* 61 Wis. 552, 21 N. W. 539.

2. The defendants proposed two separate questions, among others, for the special verdict,—one inquiring whether the plaintiff knowingly made false entries in his books as to the amount of oil on hand, and the other whether he made such entries as to the amount of flaxseed on hand. The court, however, covered the two inquiries by one question, asking the jury whether the plaintiff made such entries as to the amount of oil *or* flax. This is said to be error, because the question is double. We do not so consider it. If the plaintiff made a wilfully false entry as to either the oil or flax, the result was the same. It was a matter of no importance for the jury to specify which commodity was falsified. It was sufficient if it was either. The inquiry was in reality a single one, namely, whether the plaintiff made a knowingly false entry as to his stock.

3. The court charged the jury, in reference to the defense of arson, that "fraud is never presumed, but must be clearly proved," and this is alleged as error. It is well settled that fraud, when charged, must be proved by clear and satisfactory evidence. *Shaw v. Gilbert,* 111 Wis. 165, 86 N. W. 188; *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38, 71 N. W. 69. No claim of error, therefore, on this branch of the instruction seems tenable. It is true that this court in one case (*Wheeler*

*v. Konst,* 46 Wis. 398, 1 N. W. 96) criticised the charge, "Fraud cannot be *inferred,* but must be proved," on the ground that this might be construed by the jury to mean that fraud could not be proved by circumstantial evidence, or, in other words, could not be "inferred" from circumstances. The word "presumed," however, has an entirely different meaning from the word "inferred," and we are unable to see that the charge as given was erroneous or likely to mislead.

4. The jury found that there were false entries made in the plaintiff's books, but that plaintiff did not knowingly make them; that these entries showed a greater amount of oil on hand than actually was there; that plaintiff submitted the account showing such false entries to the adjusters, but did not know that it contained false entries, nor intend to deceive the adjusters, nor was the act calculated to influence the adjusters to allow more than the plaintiff was entitled to recover, nor did it actually so influence the adjusters, and that the adjusters knew of the false entries, and considered their falsity in making the adjustment. If it were necessary, in order to sustain this judgment, to harmonize all of these findings, and demonstrate that they were consistent with each other and with reasonable probabilities, it might be somewhat difficult to do so. But it is not necessary. Just why so many inquiries were put to the jury upon the subject does not appear. The questions for the jury on this branch of the case were really but two in number, viz.: (1) Were false entries as to the amount of the insured property made in the plaintiff's books or statements submitted to the adjusters? and, if so, (2) were such entries made intentionally with the purpose of securing a greater amount of insurance money? If both of these questions are answered in the affirmative, then the plaintiff has committed a fraud which avoids his policy under the clause providing that the policy shall be void "in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof." It was not necessary

that such fraud should have been actually successful, or that any actual damage should have resulted. *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38, 71 N. W. 69; *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57. As was said in the *Dohmen Case,* "Any trick, artifice, or deception practiced with the object of securing some advantage in the adjustment or payment of a loss under a policy of insurance to the prejudice of the insurer, and liable to have that effect, avoids the policy." 96 Wis. 56, 71 N. W. 74. The intentional falsification of books or statements showing a greater amount of property on hand than the fact was, and submission of such books or statements to the adjusters as correct, fulfills every requirement of the condition avoiding the policy, regardless of the fact whether damages actually resulted to the insurance company. Such an act is manifestly liable to deceive the insurer and cause him to pay more than he in justice ought to pay, and the only questions left for the jury are whether it was done, and, if so, whether it was intentionally and wilfully done. As will be seen from the findings of the special verdict, the jury in the present case decided that, though false entries were made in the plaintiff's books and in his statement submitted to the adjusters, showing a greater amount of stock than was actually on hand, still that the plaintiff did not knowingly cause such entries to be made, or know that they were false, nor intend to deceive the adjusters thereby. These findings were based upon some evidence. We cannot say they were against the overwhelming preponderance of the evidence, and they settle the question as to the alleged fraud adversely to the defendant. It is unnecessary to consider the other questions and answers of the verdict as to whether the entries were calculated to deceive, or did in fact deceive, the adjusters. These inquiries become immaterial.

These considerations really dispose of all the serious questions in the case. There was ample evidence on which to base the jury's findings that the plaintiff's mill had not ceased to

operate for a period of more than ten days, and that the plaintiff was not guilty of arson.

An objection as to the form of the judgment is suggested. The defendant had issued three separate policies on different classes of property, and a separate action was brought on each policy. The actions were, however, all consolidated for trial with the actions against the other insurance companies. A single judgment was rendered against the defendant for the aggregate amount found due upon the three policies. It is said by the appellant that a separate judgment should have been rendered for the amount of each policy. The objection is without merit. The statute provides that a "separate judgment" shall be rendered against each defendant (sec. 2609a, Stats. 1898), but it does not provide that a separate judgment shall be rendered on each insurance policy, and such a construction of the statute would be absurd. The entry of one judgment against each defendant for the aggregate sum found due under its several policies was plainly the proper course. When a plaintiff sues in one action on two causes of action, and is successful in both, he enters one judgment for the aggregate amount of both recoveries; and the present case is an entirely analogous one.

*By the Court.*—Judgment affirmed.