Peat, Respondent, vs. Chicago, Milwaukee & St. Paul
Railway Company, Appellant.

*March 21—April 17, 1906.*

*New trial: Discretion: Review on appeal: Railroads: Injury to pas-
senger: Evidence: Burden of proof.*

1. Although the great weight of evidence is against the verdict, if
   there is any credible evidence to sustain it the refusal of the
   trial court to set it aside will not be disturbed.

Peat v. Chicago, Milwaukee & St. Paul R. Co. 128 Wis. 86.

2. But if any fact essential to the verdict is supported only by testimony so in conflict with conceded and established physical facts as to be incredible for the reason that its truth is morally impossible or so improbable in the course of nature as to approximate impossibility, the setting aside such verdict is no longer discretionary with the trial court but a duty, failure of which is reviewable on appeal.

3. Plaintiff's uncorroborated testimony in this case that his injury (the cutting of his foot nearly off) was sustained when he was ejected from defendant's passenger train was rendered incredible by physical and established facts; and the verdict awarding him damages for that injury was so wholly unsupported that it was error not to set it aside. KERWIN and SIEBECKER, JJ., dissent.

4. Where there are two reasonably probable theories to account for an injury, the burden is upon the plaintiff to prove by some credible evidence that one which establishes defendant's liability.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Plaintiff was a passenger on defendant's train leaving Minocqua for the south between 4 and 4:15 p. m. January 13, 1902. At or near Hixon, a flag station with no buildings or platform, plaintiff was put off the train as result of a controversy as to nonpayment of fare, about three miles and a half from Minocqua. About 6:30 the same evening he was picked up by a north-bound train at a point 500 or 600 feet south of the south end of the passing·switch at Hixon with his foot cut nearly off so that it was hanging by the tendon Achilles; was taken to Minocqua and treated, the foot being amputated. The testimony of the plaintiff and two other witnesses offered by him was that he was ejected at a point about three quarters of a mile north of Hixon. The testimony of the train hands and of one passenger was that his ejection took place at the station of Hixon and at a point varying from 200 to 500 feet north of the south switch of the passing track at that station. Plaintiff testified that in ejecting him he was pushed down the steps while the train was moving at the rate of five or six miles an hour, and that he

swung off, let go his hold, and got his foot under the car. The testimony of his two witnesses is that at the time of his ejection from the car the train was moving at some such rate; neither of them saw the manner of his reaching the ground or the fact of his injury. All of the witnesses of the defendant testified to the effect that the train was stationary, having first stopped for the alighting of a passenger, then started again, and been at once stopped after moving from one to three car lengths; also that plaintiff reached the ground in safety, attempted to board the next car, but that the brakeman then alighted and held him away until the rear end of the last car had passed him, and that he was seen standing beside the track for some moments after the train passed on. Plaintiff's further narrative is that, having been ejected three quarters of a mile north of Hixon, and discovering that his foot had been cut off, he crawled a distance of some sixty or seventy rods along the track, when, at a curve about a half a mile north of Hixon, he saw the headlight of an approaching train from the south and crawled off the track to the side, and, as this train passed by him, shouted so as to attract the attention of the brakeman, who caused the train to stop, whereupon he was taken into the caboose and carried to Minocqua.

Another freight train, No. 94, reached Hixon about 6:20 p. m. and waited to pass a special log train from the south. As that log train appeared around the curve the engineer of No. 94 saw a man walking on the track 600 or 700 feet south of him, who, as the north-bound train approached, turned off the track and disappeared from his vision. After the log train had gone onto the switch at Hixon as No. 94 proceeded south, the engineer of that train saw something near this same point crawl across the track and the head brakeman saw a man lying on the west side of the track, who waved his hand and said something which he did not understand. That train passed on southward. Then the log train backed southward off the switch, and, as it did so, the brakeman on the caboose

saw something crawl across the track, and, as they passed it, the plaintiff called to him that his foot was cut off. They accordingly brought the caboose beside the plaintiff and lifted him in and carried him to Minocqua. Next morning the section foreman, having learned of the accident and seen plaintiff, went to Hixon, and found at a point about 500 feet south of the south switch on the snow a considerable spot of blood on each side of the track and a trail of blood across the track from one to the other, but found no blood elsewhere.

A general verdict for the plaintiff was returned, a motion for a new trial for errors and because the verdict was contrary to the evidence was overruled, and judgment entered for plaintiff, from which the defendant appeals.

For the appellant there was a brief by *J. W. Cochran* and *H. H. Field,* attorneys, and *Chas. E. Vroman,* of counsel, and oral argument by *C. H. Van Alstine.*

*W. E. Wheelan,* for the respondent.

The following opinion was filed April 17, 1906:

DODGE, J. Appellant's principal contention is that the court erred in overruling the motion for new trial, which counsel primarily supports by assertion that the evidence so overwhelmingly preponderates against plaintiff that refusal to set aside the verdict on that ground was an abuse of discretion. This position is wholly untenable if there was any credible evidence to sustain plaintiff's contention as to the material facts. In such case, while the trial court has authority in its discretion to set aside the decision of the jury as likely in his judgment to work injustice, this court will not reverse a refusal so to do. *Flaherty v. Harrison,* 98 Wis. 559, 562, 74 N. W. 360; *Collins v. Janesville,* 117 Wis. 415, 424, 94 N. W. 309. None of the cases cited by appellant's counsel antagonize this rule, though he seems to think his attitude supported by a quotation from *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 387, 80 N. W. 467, to the effect that this

court will reverse when it appears that the verdict is against the great weight of the evidence, and that supporting it is impeached or rendered improbable by conceded facts and all reasonable inferences. We pointed out in *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 256, 91 N. W. 666, that this rule requires not only that the great weight of evidence should be opposed to the verdict, but also that the so-called evidence seeming to support it should appear to be incredible as inconsistent with fully established facts or the known natural course of events. The meaning of the expression "against all reasonable probabilities," as rendering testimony incredible, was further explained in *Bourda v. Jones,* 110 Wis. 52, 60, 85 N. W. 671, 674, as follows: "A sworn statement which is obviously false in the light of reason and common sense and facts within common knowledge is not to be received in court as true because some witness wilfully or ignorantly or recklessly so testifies;" and again in *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57: "Testimony may be so in conflict with conceded and established physical facts as to be incredible for the reason that its truth is morally impossible or so improbable in the course of nature as to approximate impossibility."

When, however, any fact essential to a verdict is supported only by evidence thus rendered incredible, the setting aside such verdict is no longer discretionary with the trial court but a duty, failure of which is error reviewable on appeal. *Flaherty v. Harrison, supra; Cawley v. La Crosse C. R. Co.* 101 Wis. 145, 150, 77 N. W. 179; *O'Brien v. C., St. P., M. & O. R. Co.* 102 Wis. 628, 78 N. W. 1084; *Musbach v. Wis. C. Co.* 108 Wis. 57, 68, 84 N. W. 36; *Bourda v. Jones, supra; Ellis v. C., M. & St. P. R. Co.* 120 Wis. 645, 98 N. W. 942. In the light of this rule and the authorities we proceed to examine the evidence.

The only elements of fact upon which the evidence can be considered at all in conflict, except by the testimony of plaint-

iff himself, are as to whether he was ejected from the train three quarters of a mile north of Hixon or at the station, and whether, at the time of his ejection, the train was moving or stationary. Upon both these subjects the conflict is between witnesses, and while the testimony for the defendant is in a very high degree more certain and probable than that offered for the plaintiff, we shall not deem it necessary to declare the latter incredible. The crucial question is not just where plaintiff was ejected, nor whether he was ejected while the train was in motion, but whether his foot was severed at that time. Upon this question we are convinced that physical facts, and facts so impossible of mistake as to the operation of the railroad, and so undisputed by anything except plaintiff's own testimony that they must be taken as true, render incredible plaintiff's story as to that fact, either in connection with the details to which he testifies or with any other conceivable state of facts. It is established beyond controversy that he left the passenger train at a point, either 700 or 800 feet according to defendant's witnesses, or more than three quarters of a mile according to plaintiff, north of the place where, according to the testimony of the train hands who picked him up, he was found with his foot severed and bleeding. As to whether the place at which he was picked up is established, we can have no doubt. He locates it at a point considerably north of Hixon. In order that this should be true we must disbelieve that train No. 94 passed over the track southward, as testified by its various train hands and by the train hands of the north-bound logging train. A mistake in this regard by this crowd of witnesses with reference to such business is not credible. Secondly, we must ignore the physical fact that the only blood stains on the snow were south of Hixon and not north of it. And thirdly, we must disbelieve the testimony of all the train hands of the north-bound logging train as to the operation of that train and the place where they found this injured and bleeding man. A more

·cogent and complete case of physical and established facts inconsistent with the testimony of the plaintiff as to the place where he was picked up can hardly be conceived.

But almost equally conclusive are the facts against the theory that he could have received the injury which he suffered, at any other place than near where he was found. Even if we concede it possible that a man with a severed foot may, at the end of two hours, with no precautions against the hemorrhage, be conscious, even if alive, we still have the fact that all his movements which are disclosed by any evidence ·except his own are traced upon the snow by his blood, and that those movements are consistent with the fact that up to ·the time the north-bound logging train approached him and he was seen 500 or 600 feet south of the south switch at Hixon on the track he had not received this injury. Between that point and the place of ejection from the passenger train the snow was absolutely free from those marks which he must have left had he passed over it with the injured foot. ·Of course, as plaintiff contends, there is the other physical fact that his foot was in fact injured in some way and, doubtless, by a railroad train. The evidence shows a situation in which such an injury is entirely within reasonable probabilities, wholly consistent with the known facts, except perhaps plaintiff's own story. He was seen immediately in front ·of an approaching train. He had been ejected at a lonely and almost uninhabited spot, and was, of course, anxious to ·find transportation therefrom. It is entirely within the probabilities that, as this train slowly approached to enter the switch, he attempted to board one of the cars, and, under the conditions likely to exist in mid-January, was unsuccessful, and fell so that he received the injury without his attempt being observed by the train hands as they went by to the northward. This theory is consistent with the testimony of the engineer of train No. 94 that he was crouching by the side of the track making signals as that train went south a few

minutes after.   It is also consistent with the description of
the blood spots, which are not of the dimensions likely to have
been developed from hours of bleeding.

Of course it is not at all necessary for the defendant to
prove how the injuries were received.   It is only necessary
that there should be some reasonable hypothesis to account for
the fact of injury to deprive it of any strong probative force
in favor of plaintiff's theory that it was received at the time
he was ejected from the passenger train two hours before he
was found.   Where there are two reasonably probable theo-
ries to account for an injury the burden is upon the plaintiff
to prove by some credible evidence that one which establishes
defendant's liability.   *Musbach v. Wis. C. Co.* 108 Wis. 68,
84 N. W. 36.   In the situation thus disclosed, the plaintiff's
uncorroborated testimony that he received his physical inju-
ries when ejected from the passenger train and that he was
picked up by the log train at a point north of Hixon was ren-
dered incredible.   The verdict awarding him damages for
that injury was wholly unsupported, and error was committed
in refusing to set it aside.

The only other error assigned relates to a detail of the in-
structions not likely of repetition upon retrial, which, there-
fore, we need not discuss.

*By the Court.*—Judgment reversed, and cause remanded
for a new trial.


The following opinion was filed May 9, 1906:


KERWIN, J. (*dissenting*).   I cannot concur in the opinion
of the majority of the court.   I believe there was sufficient
evidence to carry the case to the jury.   The plaintiff testified
that he was ejected from the train at a point some three
fourths of a mile north of Hixon, and was corroborated in his
testimony on this point by two credible witnesses.   True,
these witnesses did not testify respecting the injury, since

they were in the car and did not see plaintiff after he was taken by the conductor and brakeman out upon the steps and removed from the train.   Plaintiff testified that as he was pushed off the steps he grabbed the iron rail with his right hand and hung on and swung in between the two coaches; that he thought he could push himself out to avoid being cut in two, and something from the outside struck him in the back and turned him over just as he let go, and he went down and was injured; that immediately thereafter he crawled some sixty or seventy rods to the point where he was found and picked up by a train going north.   The defendant's witnesses testified that the train stopped at Hixon, and after starting and going but a car length or two it was again stopped and plaintiff put off.   The evidence is not only in direct conflict with that of the plaintiff and two witnesses who testified that he was put off about three fourths of a mile north of Hixon while the train was in motion, but is also in conflict with the testimony of two credible witnesses who testified that the train did not stop at Hixon and did not stop until it reached Hazelhurst, a considerable distance south of Hixon.   So, in my opinion there was ample credible evidence to warrant the jury in finding that plaintiff was put off the train at the point claimed by him, and that the train did not stop at Hixon nor until it reached Hazelhurst; hence plaintiff could not have been put off at Hixon as contended by defendant.   There is no evidence whatever that the plaintiff was injured other than as he claims to have been.   Therefore the jury were warranted in finding that the injury occurred in the manner testified to by plaintiff, unless this evidence is rendered so incredible by established facts and reasonable probabilities as to warrant the court in disregarding it.   True, the testimony of the plaintiff as to how the injury occurred and that he was injured when put off the train is the only direct evidence on his part, but this evidence, if credible, is sufficient to warrant the jury in finding in his favor.   *Harrigan v. Gilchrist,*

121 Wis. 127, 99 N. W. 909; *Wis. F. L. Co. v. Bullard,* 119 Wis. 320, 325, 96 N. W. 833. The jury found in favor of the plaintiff and the trial judge refused to disturb the verdict.

The learned and experienced trial judge who tried this case was in a better position and better able to judge of the weight and credibility of the evidence than this court. *Harrigan v. Gilchrist, supra.* As said in *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 255, 91 N. W. 668:

"When a trial court has refused to set aside a verdict or special finding of a jury, this court will not reverse such order merely because, in its opinion, the verdict is against the preponderance or 'great weight' of the evidence; the deference which the court owes to the trial courts forbids such action. This court will reverse such a ruling only when there is no evidence to sustain the verdict or its finding, or where, though there be some evidence in its support, still the great weight of the evidence is against it, and that weight is so re-enforced by all the reasonable probabilities and inferences that it becomes overwhelming."

The rule is also laid down in *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 141, 88 N. W. 58, that

"If there is any credible evidence which to a reasonable mind can support an inference in favor of a party, the question is for the jury, and the court cannot assume to answer it, either upon motion for nonsuit or direction of verdict."

The majority opinion rests upon the hypothesis that the testimony of the plaintiff is so incredible as to render it insufficient to support a verdict. As said in the opinion of the court, the crucial question is not just where plaintiff was ejected, but whether his foot was severed at that place. In order to adopt the defendant's theory that plaintiff was ejected near Hixon we must not only disregard his evidence, but also the evidence of two other credible witnesses, who testified that he was ejected north of Hixon and that the train did not stop at Hixon. So, I think the jury would have been warranted in finding that the plaintiff was not put off at

Hixon, but at some point north thereof at or near where he claims to have been.

The remaining question is whether such a case of physical and established facts inconsistent with the testimony of the plaintiff was made sufficient to render his testimony respecting the injuries unworthy of belief. I think the questions of where he was put off and whether he was injured at that place were for the jury. Whether he was picked up at a point 500 or 600 feet south of the south end of the passing switch at Hixon, or farther north, to my mind has but little bearing upon the credibility of the plaintiff's evidence. Assuming that he was picked up as claimed by defendant, that fact in connection with other evidence would still leave the credibility of his evidence for the jury. The plaintiff may honestly have been mistaken as to where he was put off and picked up. He was unfamiliar with the place, having been over the road but once before, and not having seen it after the injury until a few days before the trial and about three years after the injury. I think, also, the testimony of plaintiff may be reconciled with the evidence of the trainmen as to the movement of train No. 94, and that the testimony respecting a man on the track before the train passed and something that looked like a dog crawling off the track is not very significant. There is no proof that the man seen was plaintiff, or any positive testimony that the object crawling was a man. The proof is that, when the 6:20 p. m. south-bound train passed, some of the crew saw a man beside the track in the snow. This was consistent with the plaintiff's evidence, except as to the place where he was picked up. He testified that immediately after the injury he started to crawl south on the track and thinks he crawled sixty or seventy rods. Of course, the distance he crawled, as well as the distance from Hixon to the point where he was ejected from the train, was to some extent, at least, a matter of conjecture. It is not at all improbable that he may have been honestly mistaken as to the exact

location of the place where ejected or the distance he dragged
himself after the injury.　There is nothing in the evidence-
to show that he bled much.　The brakeman who helped pick
him up testified that his foot bled "very little" then, and after·
he was put into the caboose, the evidence shows, it did not
bleed much.　"He had a high top rubber on his foot; blood
had soaked through it into the stocking from lying; the rubber·
was not cut, or the top was not cut."　The wheels had passed
over his foot at the instep and ankle.　The section foreman
testified that he went over the road the morning after the in-
jury, not for the purpose of locating any accident, but as he
usually did to attend to his duties as section foreman; that
he did not discover blood until he came to the place at or near
where defendant claims plaintiff was picked up, and there he
found some blood where plaintiff crossed the track at one
point, and ten feet distant from there some more.　It appears
that he went over the track in the usual course of his business;
he was watching the track and was not looking for blood spots.
If attending to his regular business, as he said he was, he was.
looking for defects in the track, not for blood, and it is not·
improbable that there might have been blood on the track that-
he did not see.　Moreover, it may be that if plaintiff contin--
ued to crawl as he says he did until he reached the point-
where he got off the track, sufficient blood did not escape·
through his footwear to be readily observable upon the track
to one passing over it on a handcar.　But, in any event, the
testimony of the section foreman respecting the absence of
blood was negative in its character and should not outweigh·
positive testimony.　*Bohan v. Milwaukee, L. S. & W. R. Co.*,
61 Wis. 391, 21 N. W. 241; *Hinton v. Cream City R. Co.* 65·
Wis. 323, 27 N. W. 147; *Hutchinson v. Holmes Sanitarium*,
93 Wis. 23, 66 N. W. 700.　The probative force of this nega-
tive evidence, given three years after the injury by a servant
of defendant, was clearly for the jury.　The same may be·

said of other evidence produced by defendant and claimed to be inconsistent with that of plaintiff.

I do not think there was evidence produced by defendant sufficient to render the plaintiff's positive testimony so incredible as to warrant this court in disturbing the judgment of the lower court in refusing to set aside the verdict.

SIEBECKER, J.   I concur in the opinion of Mr. Justice KERWIN

CASSODAY, C. J., took no part.