LATTA, Respondent, vs. FIDELITY-PHENIX FIRE INSURANCE COMPANY, Appellant.

*January 15—February 10, 1925.*

*Appeal: Weight to be accorded verdict of jury: Credibility of witness: Question for jury: Insurance: Misrepresentation as to incumbrances on property: Fraud.*

1. The question whether a witness is credible is for the jury; and if there is any credible evidence to support a verdict it will be sustained on appeal.  p. 120.
2. Verdicts may be set aside if impossible or contrary to unvarying natural laws, or when the testimony is in such conflict with conceded and established physical facts as to be incredible.  p. 121.
3. This court is not justified in setting aside a verdict sustained by the trial court because it is contrary to the preponderance of the evidence, or although this court might have reached a different conclusion on the evidence.  p. 122.
4. A finding that an insured, in his application for a fire insurance policy, did not misrepresent incumbrances on the property to be insured, is *held* to be sustained by the evidence.  p. 123.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

The plaintiff in this case made application for a policy of insurance with the assistance of an agent of the defendant company. The application was sent in and approved and policies were sent to the agent for countersignature, but before they were delivered to the plaintiff a fire destroyed the property for which the insurance was written. After the fire the insurance company discovered that the plaintiff's farm was incumbered by a mortgage of about $13,000 more than stated in the application, and the personal property by a chattel mortgage for $2,000 which was not mentioned at all in the application for the insurance in question. The defendant has refused to pay the insurance on the ground that these errors were such a misrepresentation of facts as to defeat the claim and that the agent had no authority to enter into a binding oral contract of insurance.

The plaintiff testified that the agent of the defendant company came to his farm with one Carey, and after discussing the proposition obtained his consent to make application for insurance; that the agent made out the application, asking him the questions and filling in the answers; that they were seated at the same table so that each could hear the other clearly; that the agent asked him what mortgages, if any, he had upon the farm and that he stated that there was one for $12,000 and one for $4,000; that he was asked if there were any others and he said 'Yes,' but that he did not know the amount and that the agent could obtain this information at the Clinton bank; that he knew it was about $13,000, but did not know the exact amount and did not like to discuss his affairs in the presence of the third party, Carey; that he did not mention the chattel mortgage, as he had forgotten it. The mother and twelve-year-old daughter of the plaintiff, who were in the room at the time, both corroborated the plaintiff's testimony as to the questions and answers with

respect to the incumbrances and swore that they heard the statements of the plaintiff. Carey testified that he heard the plaintiff testify as to the two mortgages and heard him mention Clinton, but did not hear him admit the existence of the other mortgage.

The defendant's agent, who was an old and experienced insurance agent, swore that when he asked the plaintiff as to the existence of any other incumbrances than the two mentioned the plaintiff said that there were no others; that the reference to Clinton was to another policy which he understood was there and which the plaintiff was to obtain and cancel. The policies contained the usual clauses of the standard policy as to warranties and incumbrances.

According to the testimony, the farm of the plaintiff was of the value of $30,000. According to the verified complaint, the actual loss to the plaintiff by fire was $18,552 and the insured loss $9,600. A claim is made by the appellant that the damages are excessive; that there should be deducted from $9,600 the sum of $770, being the amount of insurance claimed on the property burned and covered by the chattel mortgage. It is one of the terms of the policy that, "Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder." There were several classes of articles, as farm machinery and vehicles, in which the actual loss, omitting the property mortgaged, exceeded the insurance on those articles and as to which no abatement or deduction was made. In respect to the horses there was insurance of $600. In this class were included two geldings covered by the chattel mortgage. The actual loss on horses was $675. By reason of these facts a deduction of $225 was made, on account of the geldings,

Latta v. Fidelity-Phenix Fire Ins. Co. 186 Wis. 116.

from the total claim, leaving the amount found in the verdict and approved by the court $9,375 and interest.

For the appellant there was a brief by *Nolan, Dougherty & Grubb* of Janesville, and oral argument by *Paul N. Grubb*.

For the respondent there was a brief by *Richardson & Dunwiddie,* attorneys, and *Jeffris, Mouat, Oestreich, Avery & Wood,* of counsel, all of Janesville, and oral argument by *Otto A. Oestreich*.

JONES, J. Counsel for the plaintiff do not deny the claim of the defendant that if the plaintiff fraudulently concealed the truth as to incumbrances on his land the policies were invalidated. Counsel for the defendant make no claim that Scobie was not authorized to take applications for insurance. It is contended by counsel for the appellant that the verdict of the jury should have been set aside because it was contrary to every reasonable probability that the special agent of the defendant, with many years of experience, would for a moment have considered an application under the facts established by the evidence; that it is incredible that Scobie would have deliberately taken advantage of his company by transmitting an application which failed to disclose the true situation; that as a special agent it was his duty to investigate fraudulent insurance contracts and losses, and he knew that his position with the company would be lost at once if he transmitted an application in which he had omitted nearly one half of the incumbrances. It is argued that it is incredible that Scobie, with knowledge that there were outstanding incumbrances of an unknown amount, made a present contract of insurance without further investigation. It is claimed that both the plaintiff and his mother knew the approximate amount of the third mortgage and of the chattel mortgage, since the mortgage for $13,500 had been executed only four and one-half months before. It is argued that the verdict can only be sustained on the theory that Scobie prac-

ticed a fraud upon his company for the sake of a commission; that he was not a novice in insurance matters and knew the consequences of his action. In general, it is urged that the finding of the jury should be set aside because there was no credible evidence, no evidence which would convince a reasonable mind, that the plaintiff disclosed the existence of the third mortgage, and because the finding was against all reasonable probability.

These arguments were doubtless placed before the jury with much force and were entirely legitimate. If the jury had found for the defendant, the trial court would doubtless have approved their finding although the testimony of Scobie as to the main transaction stood alone, except for slight corroboration from the witness Carey, and was in direct conflict with the testimony of three witnesses. It frequently happens that juries accept testimony of a single witness in preference to that of several as to a disputed fact, and the courts feel bound to sustain the verdicts. It is not the amount of evidence or the number of witnesses that is necessarily controlling with the jury, but the weight to be given the testimony, and this involves the credibility of the witnesses.

Under our system of law the question whether a witness is credible is one for the determination of the jury. The rule is carried to the extent, as is constantly stated, that if there is any credible evidence to support a verdict it will be sustained by this court. The testimony of a witness may seem to the court quite improbable, but it will not be rejected for that reason if it has been accepted by the jury. One part of the testimony of a witness may be quite inconsistent with other portions. What credence should be given to it is a question for the jury. When the testimony of two witnesses conflicts, the court may believe that one is of higher standing or better character than the other, but it is for the jury to decide between them. The rule that the

credibility of witnesses is a subject within the province of
the jury is fully recognized by counsel for the appellant, but
they argue that the facts in this case bring it within the ex-
ception to or qualification of the general rule as to the bind-
ing effect of the finding of a jury.   They cite numerous
decisions of this court of which the following are typical:
*Herschman v. C., M. & St. P. R. Co.* 176 Wis. 209, 186
N. W. 613; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352,
77 N. W. 714; *Badger v. Janesville Cotton Mills,* 95 Wis.
599, 70 N. W. 687; *Vorbrich v. Geuder & Paeschke Mfg.
Co.* 96 Wis. 277, 71 N. W. 434; *Peat v. C., M. & St. P.
R. Co.* 128 Wis. 86, 107 N. W. 355; *Bourda v. Jones,* 110
Wis. 52, 85 N. W. 671; *Beyer v. St. Paul F. & M. Ins. Co.*
112 Wis. 138, 88 N. W. 57; *Flaherty v. Harrison,* 98 Wis.
559, 74 N. W. 360; *O'Brien v. C., St. P., M. & O. R. Co.*
102 Wis. 628, 78 N. W. 1084; *Musbach v. Wisconsin C.
Co.* 108 Wis. 57, 84 N. W. 36; *Ellis v. C., M. & St. P.
R. Co.* 120 Wis. 645, 98 N. W. 942.   Most of the actions
were for personal injuries, and in some instances cases in
which the testimony of a single witness, a party, was in
conflict with that of numerous witnesses.   But it will be
found that in the class of cases referred to, there was gen-
erally, if not always, some other element than mere conflict
in the testimony of the witnesses.

Under the qualification of the general rule, verdicts may
be set aside if impossible or contrary to unvarying natural
laws; or when the testimony is in such conflict with con-
ceded and established physical facts as to be incredible.
*Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W.
57; *McKnelly v. Brotherhood of American Yeomen,* 160
Wis. 514, 152 N. W. 169.   In this connection it was said by
Mr. Chief Justice WINSLOW:

"(1) The verdict of a jury is not to be set aside except
in a case where there is no evidence in its support, or where
the great weight of the evidence is against it and that weight
is so reinforced by undoubted physical facts or by all the

reasonable probabilities and inferences that it becomes over-whelming. *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 91 N. W. 666; *Peat v. C., M. & St. P. R. Co.* 128 Wis. 86, 107 N. W. 355; (2) that the decision of the trial court is not to be set aside unless we are satisfied that the decision was clearly wrong." *McKnelly v. Brotherhood of American Yeomen, supra.*

In earlier cases the rule was stated somewhat more broadly as follows:

" 'The jury will not be warranted in finding the existence of a fact on the positive testimony of a witness, which is contrary to conceded facts or matters of common knowledge, or to all reasonable probabilities.' . . . When it appears that the trial court has sustained a verdict upon testimony contrary to the great weight of the evidence, and which is impeached or rendered improbable by other conceded facts in the case, or is against all reasonable inferences or probabilities in the case, this court is bound to, and will, interfere for the relief of the aggrieved party." *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80 N. W. 467.

On the other hand, this court is not justified in setting aside a verdict sustained by a trial court because it is contrary to the preponderance of the evidence or although this court might reach a different conclusion on the evidence. *Asserin v. Modern Brotherhood of America,* 147 Wis. 520, 133 N. W. 579; *Behling v. Wisconsin B. & I. Co.* 158 Wis. 584, 149 N. W. 484; *Milwaukee Trust Co. v. Milwaukee,* 151 Wis. 224, 138 N. W. 707. Applying these tests, can it be said that the verdict of the jury in this case, sustained by the trial court, should be set aside? It is conceded that the plaintiff did not state the full amount of the mortgages upon his property, but there was testimony of two witnesses besides the plaintiff that he gave Scobie the information which, if followed up, would have led to full knowledge. The mortgage for $13,500 and the chattel mortgage were given to cover an accumulation of unsecured notes and past-due interest. It does not seem incredible or impossible of

belief that the plaintiff and his mother did not know four and one-half months later the amount. There were various lapses of memory and some inconsistencies in the testimony of Scobie, which it is unnecessary to discuss, but which no doubt made their impression upon the jury. It is argued on the one hand that the finding of the jury can rest only on the theory that Scobie was guilty of gross fraud on his company in taking insurance on property so heavily incumbered, and on the other hand that there was no motive on the part of the plaintiff to conceal the facts, since the insurance in question was a substitute for other insurance, was not excessive, and that he was intelligent enough to know that gross fraud would probably be discovered and defeat his entire insurance in case of loss. According to the undisputed evidence there was some reference in the conversation to the Clinton bank. The jury may have believed that on this subject there was some oversight or misunderstanding. We do not consider that their finding was necessarily based on the view that Scobie was guilty of gross fraud. The court gave full instructions as to the effect of warranties and false representations in the application. We cannot say that there was not credible evidence to support the finding of the jury on the question of fraud.

The claim that the damages were excessive rests largely on an admission of the plaintiff's counsel made during the trial to the effect that the claim as filed should be reduced by the sum of $770, the value of the property lost and covered by the chattel mortgage. It is agreed by counsel for both parties that under the standard policy the penalty is more severe for fraudulently concealing the existence of a real-estate mortgage than a chattel mortgage. In one case the policy is entirely invalidated, while in the other the policy is invalidated only as to the property covered by the mortgage. Before the case was submitted to the jury it seems to have been discovered that, according to the legal effect of the chattel-mortgage clause in the policy, the admission

above referred to had been inadvertently made and that the only deduction proper to be made was the sum of $225. In the charge the court in considerable detail explained to the jury the limits for recovery on the several classes of insured property, giving the items, and leaving it to the jury to determine to what extent the proof sustained the plaintiff's claim as to the value of the property destroyed, which was covered by insurance in one class or another and not included in the chattel mortgage, and stating that the verdict could not exceed $9,375 and interest. No exception was taken to the instruction on this subject, and we do not consider that there was reversible error in respect to the damages allowed.

*By the Court.*—Judgment affirmed.