## TECHE LINES, INC., v. BOUNDS.

(Division B. March 21, 1938.)

[179 So. 747. No. 32869.]

White & Morse, of Gulfport, and **Porteous, Johnson & Humphrey**, of New Orleans, La., for appellant.

**Gex & Gex**, of Bay St. Louis, and **G. B. Keaton**, of Picayune, for appellee.

Argued orally by **Stanford E. Morse**, for appellant, and by **W. J. Gex, Jr.**, for appellee.

**Griffith, J.**, delivered the opinion of the Court.

Appellee alleged in his declaration and by his testimony that he was severely and permanently injured in his left eye by a piece of loose gravel thrown from the wheels of one of appellant's busses, as a proximate consequence of the excessive and unlawful rate of speed at which the bus was traveling on a public highway, and as it passed appellee, who was traveling in an automobile in the opposite direction. On the facts, the case in many respects is similar to Teche Lines, Inc., v. Bateman, 162 Miss. 404, 139 So. 159.

Appellee averred that a piece of gravel, so thrown, struck the left lens of his spectacles, shattered the lens, and drove four pieces of the glass thereof into his left eye, causing a serious and permanent injury thereto, as aforesaid. During his testimony he pointed to his left eye in illustration of his evidence, whereupon appellant moved that his eye be examined by a competent eye spe-

cialist, which motion was sustained, and an examination was made by a specialist of more than twenty years' practice, who testified that there was and had been no traumatic injury to the eye; that such an injury by pieces of broken glass driven against and into the eye would invariably leave a scar perceptible to the instruments of examination used by specialists, and as was used by him on this examination; and that there was no scar or scars. His testimony was that appellee's trouble was a congenital astigmatism and not a traumatism.

To rebut the said testimony of the specialist, appellee introduced a general practitioner of medicine who testified as follows:

"Q. From your experience in the practice of medicine, would you say it would be possible for injury to have occurred to the eye by traumatism that would cause astigmatism and leave no scar? A. It is possible."

This was the only question to and answer by this physician in respect to scar or scars and presents no answer to the testimony of the specialist; for the answer was only that it was possible. We have distinctly heretofore held that medical testimony that a certain thing is possible is no substantial testimony at all. Berryhill v. Nichols, 171 Miss. 769, 158 So. 470. Unless such testimony is in terms of probabilities, it is not probative. The physician, who is alleged to have taken the pieces of glass out of the eye on the day of the alleged injury, reported that he was sick and did not attend the trial.

Appellee says, however, that the court was in error in ordering the examination and that the testimony of the specialist should, therefore, be disregarded; that the order is not sustained by the holding of this court in Dixie Greyhound Lines, Inc., v. Matthews, 177 Miss. 103, 170 So. 686. In that case, at page 115 of 177 Miss., 170 So. 686, 688, the court quoted, with approval, as follows: "An examination of the cases will show that the courts have uniformly held that, where a plaintiff in a personal

injury suit voluntarily exhibits the injured part of his body to the jury for inspection, the portion of his body so exhibited becomes an exhibit in the case, like any other object or thing introduced in evidence, and the opposite party has the right to make such inspection of it as will enable him to explain, criticize, or impeach its value as evidence, and to that end have it examined by experts." The other approved quotations in the opinion are to the same effect. That opinion was prepared after a long and most thorough consideration by the entire court, and we will not take it to pieces by technical refinement of argument in subsequent cases.

Appellee testified that the force of the piece of gravel, breaking the lens of his spectacles, was sufficient to shatter the lens, and to drive four pieces of the shattered glass into his left eye, these pieces being so large that they were capable of being put, and were put, into a glass vial after being taken out of the eye, and appellee exhibited to the jury a vial said to contain the four pieces of shattered glass; and yet he testified further that with these four pieces of glass sticking in his eye he drove his automobile some six or seven miles to a physician, who removed the pieces of glass. In view of the testimony of the specialist that there had been no such wound to the eye, and in view of the further fact that appellee had asserted injuries of some sort to his eyes, on two previous occasions, we addressed to counsel a request for additional briefs upon the question "whether it was reasonably probable, according to the course of common or natural experience and observation, that a person with four pieces of shattered glass in his eye, large enough when taken therefrom to be preserved and exhibited in a vial, could have driven an automobile some six or seven miles, immediately following the alleged injury with these pieces of glass imbedded or sticking in his eye, and before he received any treatment therefor."

In response to that inquiry appellee has not attempted

to submit any argument that the happening was probable, but has urged that it was possible, and that since the jury has found that it actually occurred, it is not within the province of the court to inquire into it. Certainly it was possible, as almost anything is possible. We recently said in Yazoo & M. V. Railroad Co. v. Lamensdorf, 178 So. 80, "that to present a possibility, rather than a believable probability, is not a sufficient basis for a verdict and judgment." Because the argument continues to be made, as here, and so often, that a bare possibility is converted by a jury verdict into an actuality or into a probability, there is need to more fully recur to, and to review, original principles on that question.

If there be any one thing in the administration of law upon which the decisions, the texts, and the general opinion of bench and bar are in agreement, it is that evidence which is inherently unbelievable or incredible is in effect no evidence and is not sufficient to sustain a verdict. This is true even in those jurisdictions which still cling to the scintilla of evidence rule. And, except in the few jurisdictions wherein the latter rule prevails, the overwhelming weight of authority throughout the country is that believable or credible evidence in civil cases is that which is reconcilable with the probabilities of the case and that bare possibilities are not sufficient. Where evidence is so contrary to the probabilities when weighed in the light of common knowledge, common experience, and common sense that impartial, reasonable minds cannot accept it other than as clearly an improbability, it will not support a verdict.

"It has been commonly said: Verdicts must rest on probabilities, not on bare possibilities. There is not capacity in any number of the former to create the latter. So the person on whom the burden of proof rests to establish the right of a controversy, must produce credible evidence from which men of unbiased minds can reasonably decide in his favor." Samulski v. Menasha Paper

Co., 147 Wis. 285, 133 N. W. 142, 145. "An inherently incredible story is not made credible by being sworn to. Nor can it be allowed to serve as the foundation of a verdict." McCarthy v. Bangor, etc., Co., 112 Me. 1, 90 A. 490, 492, L. R. A. 1915B, 140, 142. "Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible, . . . although there may be evidence tending to support it." Lessig v. Reading, etc., Co., 270 Pa. 299, 304, 113 A. 381, 382, quoting from Norfolk & W. R. Co. v. Strickler, 118 Va. 153, 86 S. E. 824. "The jury will not be warranted in finding the existence of a fact on the positive testimony of a witness, which is contrary to conceded facts or matters of common knowledge, or all reasonable probabilities." Lattar v. Fidelity etc. Co., 186 Wis. 116, 122, 202 N. W. 299, 302.

The above are a few quotations which could be supplemented by hundreds from nearly every common-law jurisdiction. Our own decisions, upon the precise point, are in accord therewith from the early history of this court down to our last expression in Yazoo & M. V. Railroad Co. v. Skaggs, 179 So. 274, 278, wherein we held: "As this court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a probability." See, also, Yazoo & M. V. Railroad v. Lamensdorf, supra. Incredibility as measured in the scales of probability was acted upon in review as early as Wilson v. Horne, 37 Miss. 477. The Supreme Court of Missouri in Hook v. Ry. Co., 162 Mo. 569, 580, 63 S. W. 360, 362, has tersely stated the rule thus: "Though this court will not undertake to measure the probative force of the conflicting testimony of witnesses upon controverted issues of facts, but . . . must leave those matters . . . to the jury for determination, still [the court] is not so deaf to the voice of

nature, or so blind to the law of physics, that every utterance of a witness in derogation of those laws will be treated as testimony of probative value for the consideration of the jury, simply because of its utterance."

It is not essential to a review that the improbability shall amount to an impossibility. This precise question was recently considered and decided in Interstate Fidelity Building & Loan Ass'n v. Hollis, 41 Ariz. 295, 17 P. (2d) 1101, 1102, wherein it was held that a verdict should be set aside if the testimony in support thereof is so incredible as to be beyond the ordinary experience of mankind, and that the rule would be too narrow which would hold that a reversal may be had only where the improbability amounts to an impossibility. The best and most succinct statement which we have found is that of the court in Spiro v. St. Louis Transit Co., 102 Mo. App. 250, 262, 76 S. W. 684, 688, as follows: "Verdicts resting on evidence which looks contrary to the ordinary course of nature are not infrequently set aside and retrials directed, by appellate courts, as a proper precaution against an unjust outcome of litigation. While it is fundamental that juries must weigh evidence, and trial judges revise their findings, instances happen in which, from one cause or another, this practice so obviously failed to work out a right result that an imperative call is heard to supplement it by an exceptional procedure, in order that justice, the end of all procedure, may not be frustrated. This prerogative of courts of error is sparingly employed, but that it exists, as an emergency expedient, for the correction of verdicts palpably wrong, is certain. The appropriate use of it does not require a court to be convinced that the jury found an event to have occurred that was physically impossible or miraculous. It is enough if the event found was so improbable, according to ordinary operation of physical forces, or was so overwhelmingly disproved by credible witnesses, as to compel the conviction that the jury either failed to weigh the evidence

carefully, or drew unwarranted inferences, or yielded to a partisan bias."

Upon a review of all the authorities, including, of course, our own cases, the rule must be declared by way of resume as follows: Verdicts are to be founded upon probabilities according to common knowledge, common experience, and common sense, and not upon possibilities; and a verdict cannot convert a possibility or any number of possibilities into a probability. But before an appellate court can say that what the jury has adjudged as if a probability is nevertheless only a possibility, it must be clear or manifest that only a possibility rather than a probability is shown by the evidence. Some of the cases say that a test is whether the alleged fact found by the jury is or is not extremely improbable or highly improbable. These terms are indefinite, and we prefer the terms which have so long been generally used in this jurisdiction in connection with the review of findings of fact, to-wit, that they will be set aside when, but only when, manifestly or clearly wrong, which is to say, when, but only when, clearly or manifestly against all reasonable probability.

The question before us, then, is this: Is it clearly or manifestly improbable that a man could have driven an automobile six or seven miles with four pieces of glass in his left eye, these pieces of glass being so large that they were capable of being taken out of the eye and placed in a vial for later exhibition, and when it is considered in connection therewith that the alleged presence of the pieces of glass in the eye was the result of a violent projection of a stone against the eyeglass breaking of the lens into fragments, four pieces of which were driven into the eye by the force aforesaid?

Thinking that perhaps some aid could be derived from standard medical books dealing with injuries to the eye and the consequent symptoms thereof, we requested that, in the additional briefs aforementioned, counsel would point out to us what is said by such treatises on the pre-

cise point here under discussion, and to cite to us the legal authorities whether we could consult the medical books on the subject in arriving at a conclusion. The response was such that we find that the medical books treat of the point under inquiry in such a general way, or so obscurely to the nonprofessional mind, that no aid would be derived from their use; hence it is not necessary to decide whether we would be authorized to look to medical books.

We must, therefore, resort to common sense, common experience, and common observation as regards the common facts of nature, and answer the stated question accordingly. There is no part of the human anatomy more sensitive to injury than the eye, or wherein the pain and distress resulting therefrom is more distracting—a fact known to all men. The eye involuntarily closes even to a gust of dust or sand, and an injury to one eye sets up an involuntary sympathetic response from the other. Had it been averred that these pieces of glass went into both eyes, we would, upon an instant, unhesitatingly say that to have driven an automobile six or seven miles in that condition would have been so nearly impossible as to be utterly unbelievable. Is it still clearly improbable, when the injury, severe as is claimed, was to one eye? We have concluded, after mature consideration, that "as a proper precaution against an unjust outcome of litigation" the answer to that question must be that it is clearly or manifestly improbable; that any other answer would put too great a strain on credulity; that the jury must have considered that, since the alleged occurrence was possible and was testified to by appellee as a fact, the jury was obliged to accept it as such, which is not the law either in this or in any other jurisdiction. The proof is sufficient that appellee was struck in the eye, but not that he suffered any such injury therefrom as claimed by him, and as was allowed in the verdict.

Affirmed as to liability; reversed and remanded as to amount of damages.