WAGNER, Appellant, vs. ENGEL-MILLAR COMPANY, Respondent.

*December 8, 1910—January 10, 1911.*

*Gaming contracts: Transactions on board of trade: Brokers: Intent to deliver: Evidence: Questions for jury.*

1. Where a broker executes on a board of trade a client's order to buy grain for future delivery the transaction is valid under sec. 2319a, Stats. (1898), if either of them intends in good faith that the contract of purchase shall be performed by delivery of the grain or of warehouse receipts therefor; and if in such a case, before the time for delivery, the broker sells the grain by order of his client and at a loss, he may recover the amount of such loss from the client.

2. The question whether there was a good-faith intent of either party that there should be actual delivery of the grain is not settled by the statements of the parties themselves, but, in addition thereto, all the facts and circumstances throwing light on the intent are to be considered. The facts that the transaction is a board of trade transaction and upon a margin are not conclusive against such intent.

3. There being in this case direct and positive evidence of an intent on the part of the broker that there should be actual delivery, and the existence of such intent not being incredible or against all the reasonable probabilities and the overwhelming weight of the evidence, the question was for the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This is an action to recover $618.75 alleged to have been expended by the plaintiff in the purchase of corn on the board of trade in Chicago at the request of the defendant. The defense was in substance that the transaction in question was a gambling transaction and not an actual purchase of corn. The jury returned the following special verdict:

. "(1) Did both parties to this transaction, plaintiff and defendant, intend when entering into it that it should be settled by the payment of difference in the price of corn according to the rise and fall of the market? *A.* No.

"(2) If you answer the foregoing question 'No,' then answer this question; otherwise you need not answer this question: Did the plaintiff intend, when entering into this transaction with the defendant, to make a delivery of corn under the contract? *A.* Yes."

Upon motion the trial court changed the answer to the first question from "No" to "Yes," struck out the answer to the second question, and rendered judgment for the defendant, from which the plaintiff appeals.

For the appellant there was a brief by *Burke, Alexander & Burke,* and oral argument by *W. E. Burke.*

*Ernest A. Kehr,* for the respondent.

WINSLOW, C. J.     The plaintiff was a grain broker on the Chicago board of trade, the defendant a domestic business corporation located at Milwaukee.     October 18, 1907, the defendant corporation telegraphed to the plaintiff an order to buy 10,000 bushels of May corn at 61⅛ cents, and on October 21st following an order to buy another 10,000 bushels of May corn at 61½ cents.     Both orders were immediately executed on the Chicago board of trade; that is, one of *Mr. Wagner's* employees went into the grain pit and found a seller and "contracted for the purchase" of 10,000 bushels of corn for delivery in the following May under the rules of the board of trade, the trades being noted on cards which each broker carried for the purpose.     October 29th following the defendant telegraphed the plaintiff to sell the corn previously purchased, and the plaintiff sold 20,000 bushels of May corn on the board of trade in the same manner at 58¼ cents per bushel, entailing a loss of $637.50, for which loss (less a credit of $18.75) this action is brought.

Both *Mr. Wagner* and his manager testified that, while the purchases were margin transactions, there was an actual intent to deliver the corn purchased in each case; that deliveries were expected to be made by warehouse receipts representing corn actually stored in elevators; that had the selling

order not been received, warehouse certificates for the 20,000 bushels would have been delivered in May, but on account of the order to sell there was no actual delivery. The defendant's manager, Mr. Millar, testified that he had no idea that any corn would be delivered, but that he supposed it to be a mere bet on future prices to be settled by payment of differences.

The question, of course, was whether these board of trade transactions were valid transactions or mere gambling contracts, and this depends upon the intention of the parties. If both parties, *i. e. Mr. Wagner* and Mr. Millar, intended no actual delivery, but merely a wagering contract to be settled by the payment of differences, then the whole transaction was a gambling contract and void and there can be no recovery here. If, on the other hand, either *Mr. Wagner* or Mr. Millar intended in good faith that the contracts of purchase should be performed by delivery of the corn or warehouse receipts therefor (which is the equivalent thereof), the transaction was a valid one and the plaintiff is entitled to recover. This is very well established by the statute (sec. 2319a, Stats. 1898) and by the decisions thereunder cited and reviewed in *Carson v. Milwaukee P. Co.* 133 Wis. 85, 113 N. W. 393.

The question whether there was such good-faith intent on the part of either party is not settled by the statement of the parties themselves, although such evidence is to be considered, but all the facts and circumstances throwing light on the intent are to be considered. The fact that the transactions were margin transactions, and the further fact that they were board of trade transactions, are entitled to be considered, because of the well known fact that very many, if not a large majority, of such transactions are wagering transactions entered into with no intent to deliver the actual grain, but only to settle by the payment of differences. Nevertheless these facts are not conclusive. The intent to make actual delivery may exist in such transactions.

There was direct and very positive evidence that it did exist on the part of *Mr. Wagner* in the transaction under investigation here; and we cannot say that it is incredible or that all the reasonable probabilities and the overwhelming weight of the evidence are against the existence of such an intent. Hence the question was for the jury. *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 91 N. W. 666.

The question was submitted to the jury without error, and the jury found the existence of the intent to make actual delivery on the part of the plaintiff. There being sufficient evidence to go to the jury upon that question, judgment for the plaintiff should have been entered on the verdict.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment on the verdict for the plaintiff in accordance with the prayer of the complaint.