TECHE LINES, INC., *v.* BATEMAN.

(Division B.   Jan. 18, 1932.)

[139 So. 159.   No. 29747.]

Robt. L. Genin, of Bay St. Louis, and Hugh V. Wall, of Brookhaven, for appellant.

408

410

**W. J. Gex,** of Bay St. Louis, for appellee.

Argued orally by **Hugh V. Wall** and **Robert Genin**, for appellant, and by **W. J. Gex**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The plaintiff, Mrs. Velma Bateman, brought suit against the Teche Lines, Incorporated, for an injury to her eye occasioned by a piece of rock or gravel being thrown violently through the windshield of the car in which she was riding and striking her in the eye and injuring the cornea so as to practically cause the loss of sight in said eye, except to distinguish between light

and darkness. The injury also prevents the dilation and contraction of the pupil of the eye, resulting in an excess of light into the eye, which causes her suffering and pain.

It appears that the plaintiff and her husband were proceeding north on highway No. 11 and they met the bus of the Teche Lines, Incorporated, coming south, and just as the radiators of the bus and the car were about to meet the rock or gravel was violently hurled against the windshield, penetrating the same and striking plaintiff's eye. According to the testimony .of the plaintiff and her husband, the bus was traveling at a rate of speed from fifty to fifty-five miles per hour and was throwing rocks with considerable force. They testified that the husband of the plaintiff, who was driving the car in which plaintiff and he were riding, slowed down to about ten or fifteen miles per hour and pulled to the right of the road as far as he could. The bus was on the right-hand side of the road going south, but did not slow down its speed in passing the car in which the plaintiff was riding.

The testimony for the defendant was to the effect that the bus was traveling at about thirty-five miles per hour, and that the driver thereof did not know the injury was inflicted at the time and only heard of it subsequently; that the bus was equipped with a governor which automatically kept the speed at a rate not exceeding forty miles per hour. The driver testified that it was impossible to run at a greater rate of speed than forty miles per hour with the governor equipment.

A witness who drives a school truck on highway No. 11 testified for the plaintiff that he had on a number of occasions tried to keep up with the bus, operating his own car at forty-five miles per hour, but that the bus could outdistance him at that speed. He testified that on the morning the injury was inflicted he met the bus and that it was throwing gravel, and that he heard of the accident the same day.

As to the injury of the plaintiff the physician who treated her testified: "On August 13, 1930, Mrs. C. E.

Bateman, consulted me professionally for treatment of a condition of her right eye which she told me had been injured through being struck by a flying rock which came through the windshield of her car, as she was passing another vehicle on a graveled highway. Examination disclosed that she was suffering with an injury to the cornea of the right eye, it being denuded of its corneal tissue, which is the transparent membrane of the eye—the colored part of the eye, through which we see. The condition was very painful, and the patient developed an inflammation of the eye, as an incident of the condition. I treated the case for about two months. The injury was healed, but scar tissue has formed that entirely obstructs the vision, and there is a paralysis of the pupillary sphinchters, which admits excessive light into the eye, causing irritation. To relieve this latter condition, I have equipped the patient with a dark lens on that side. While the wound has healed, in my opinion, the injury to the eye, resulting in a loss of vision, except for perceiving light and dark, is permanent.''

The plaintiff, testifying as to the injury of her eye, stated that she could not see very well. She was a trained nurse by profession, twenty-eight years of age, and in good health. The jury found for the plaintiff and returned a verdict for twelve thousand dollars.

The first assignment of error is that the court erred in granting the plaintiff the following instruction: ''The court instructs the jury that if you believe from a preponderance of the evidence in this case, that the plaintiff herein was injured by flying gravel thrown from a bus belonging to the defendant herein, while said bus was traveling at a reckless, negligent and excessive rate of speed, and that gravel was thrown by said bus because of the reckless, negligent and excessive rate of speed at which said bus was driven at said time, and that the reckless, negligent and excessive rate of speed of said bus,

if any, was the proximate cause of said injury, then you shall find for the plaintiff."

It is insisted that the reckless speed of the bus, if it be conceded that the bus was traveling at a reckless speed, had no causal relation to the injury, and that the defendant could not anticipate the injury would result from such rate of speed where the bus was traveling upon its proper side of the highway. In other words, it is insisted that the injury could not be reasonably anticipated, and that it would be unduly extending the doctrine of negligence to make it an actionable negligence for an injury resulting from displaced rocks caused by operating a motor vehicle at a high rate of speed.

Section 5569 of the Code of 1930 provides that: "No person shall operate a motor vehicle on a public highway, or street, avenue or alley of any city, town or village in this state at a greater rate of speed than is reasonable and proper, having due regard to the traffic and use of the highway; or so as to endanger the life or limb of any person or the safety of any property; or in any event on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than twenty miles per hour, or elsewhere in any municipality at a greater rate of speed than twenty miles per hour, or elsewhere outside of any municipality at a greater rate of speed than forty miles per hour, but trucks shall not in any event operate at a greater rate of speed than thirty miles per hour. Provided, that the governing authorities in municipalities, may prescribe the traffic rules within the corporate limits of the municipality and regulate the speed and fix the speed limit at which motor vehicles may be operated within the corporate limits. . . ."

Of course, it is the duty of every person who operates a vehicle upon the highway to do so in accordance with the law of the land. The statute was enacted for the public safety and to secure the safety by reasonable oper-

ation of motor vehicles. It is well known that cars proceeding at a high rate of speed on gravel roads throw gravel by reason of the force of the car striking the gravel, or by reason of the suction of the car; and it is well known that such flying gravel or small rocks are calculated to inflict injury. The greater the rate of the speed the more violent the hurling of such gravel or rocks becomes. It may be safely assumed that a person traveling the highway assumes the risk incident to travel in a reasonable and lawful manner, but when a person exceeds the speed limit allowed by law and as a result of such excessive speed injury is inflicted upon another using the highway, such party is liable for the injury occasioned thereby. Every person driving a motor vehicle upon public highways is under duty to every other person traveling such highway to exercise reasonable care and caution to prevent injury and to operate the motor vehicles in accordance with statutes prescribing the rights and duties of persons upon such highways.

The fact that the suit may be one of first impression in this state, or one of novelty in the specific injury, does not take it from the general rules governing liability for breach of duty of one person to another. It is a well-known fact that cars may be operated on some characters of highways without danger from the source of injury here involved. On a concrete or other smooth-surfaced highway missiles are not usually hurled by the car in its operation, but a person traveling on a gravel highway is bound to know that missiles are liable to be hurled with more or less violence according to the speed and weight of the car, and are bound to know that such rocks may cause injury to others. Where the violation of a specific statute causes injury, and where such injury can reasonably be anticipated, or some injury can be anticipated, from such violation, liability for the injury accrues.

It is immaterial to the consideration of the case to consider that numerous suits may be filed for such violations, and that it may be difficult for the defendant to defend claims made along this line. These are considerations to be addressed to the legislative department. We do not think the instruction applied to the facts in this case is erroneous.

The second instruction complained of reads as follows: "The court instructs the jury, for the plaintiff, that if you believe from a preponderance of the evidence that the defendant is liable to the plaintiff in this action, then in assessing damages against the defendant, you may take into consideration the pain and suffering of the plaintiff, her mental anguish, if any, the bodily injury sustained by her, her pecuniary loss, her loss of power and capacity of work, if any, and its effect upon her future."

We see no objection to this instruction as applied to the facts in this case. Whatever difference there may be in physical and mental suffering resulting from physical injury accompanied by pain, the facts in this case show clearly that the mental anguish was a result of physical suffering caused by the injury.

It is argued that the court should have given a peremptory instruction for the defendant. We think what we have already said disposes of this assignment of error. It is also plain that the verdict and judgment for twelve thousand dollars for the injury is excessive. It is always a matter of some difficulty and delicacy for an appellate court to pass upon the amount of money that should be paid for personal injuries. Still it is the duty of the court to carefully consider such questions in proper cases. In the present case the plaintiff was employed, prior to her injury, as a nurse and received one hundred dollars a month compensation. She was deprived of her employment for four months by reason of the injury. Since this time she has been replaced

on the registered list of nurses and engages in her occupation, but says that she does not take long and difficult cases. She was twenty-eight years of age and married. The injury to her eye does not prevent her from pursuing her occupation. A great many cases are collected in the briefs bearing on the amount of verdicts upheld as to injuries to the eye or loss of an eye. Of course, this depends somewhat upon the occupation or business of the person injured, but the average seems to be around five thousand dollars for different characters of injuries shown in the cases. While there was considerable suffering, and some continued suffering, in the present case, we think the verdict is excessive to the extent of five thousand dollars. If the appellee will remit the judgment down to seven thousand dollars, the judgment will be affirmed. Otherwise it will be reversed and remanded for the proper assessment of damages by another jury.

Affirmed with remittitur.