ELLIS, Judge.
The plaintiff in this case filed suit for damages for injuries received by him while riding as a guest when a rock struck him on the forehead after being projected from a preceding automobile owned and operated by one Brannen and insured by defendant, Fireman’s Fund Insurance Company.
Subsequent to the suit being filed in the District Court of East Baton Rouge Parish a settlement was reached between the insurer of the automobile in which the plaintiff was a guest passenger and the plaintiff, reserving plaintiff’s right against the remaining defendant, Fireman’s Fund Insurance Company.
After a trial on the merits, the lower court rendered a judgment in favor of the defendant dismissing the suit and the plaintiff has appealed.
The facts, for the most part, are relatively undisputed. On March 30, 1959, the plaintiff, Arden Walton, and several companions were driving in the automobile of W. G. Wheeler, travelling home after work. Immediately in front of the Wheeler vehicle, proceeding in the same direction, was the Brannen vehicle. These two vehicles were both travelling north in the right hand lane along the Airline Highway in Baton Rouge, Louisiana, in the vicinity of the Engineer’s Union Hall, which is also located near the Greenwell Springs Highway intersection near the location of the accident.. At this juncture the Airline Highway is a four lane highway with a neutral ground in between. Immediately adjacent to the highway is a ten foot strip of blacktop or bituminous surfaced shoulder. As the two automobiles were approaching the intersection where the turn could be made into the Union Hall, the automobile preceding the one in which plaintiff was a guest passenger steered from the right hand lane on the highway onto the hard surface or blacktop shoulder of.the road in preparation to making the right hand turn into the Union Hall.
After the Brannen automobile drove down the blacktop shoulder for some distance and as the vehicle in which the plaintiff was riding approached it, a rock flew from under the Brannen automobile through the open window of the automobile in Which plaintiff was riding, striking *330 him on the forehead. The blow to the plaintiff caused a severe cut immediately above the bridge of his nose and between his eyebrows.
Plaintiff was bleeding profusely and at his request the automobile was stopped. The Brannen vehicle had driven into the Union Hall and its occupants heard a commotion on the highway and went to investigate. When Brannen got there he found the plaintiff bleeding and suggested that he go to a hospital since his automobile was covered by insurance, particularly if plaintiff thought he was severely injured. The plaintiff chose to see his own doctor and after many visits and several referral checkups he was discharged as being fully recovered.
The main issue of fact is whether the Brannen vehicle while travelling on the shoulder of the road caused very much gravel to fly into the side of the automobile in which plaintiff was riding. The only material conflict in the testimony is on this particular point. Most of the witnesses for the plaintiff testified that a “shower” of gravel struck their automobile, one even testifying that the windshield was broken. The witnesses for the defendant testified that they did not notice any excess of amounts of gravel on the blacktop portion of the road, and that even after they drove thereon they did not hear any gravel bouncing or striking the fenders of the automobile as is the case with loose gravel on freshly poured concrete blacktop. All of the witnesses, however, did agree that the blacktop was relatively free from any excessive amounts of gravel as is usually the case on a road of this type.
An inspection of photographs introduced reveals that the only excessive amounts of gravel and shell that can be seen are completely off of the paved or blacktop shoulder and near the ditch bordering the embankment on the highway. A state highway engineer testified that the actual base of the entire shoulder is some eleven or twelve feet, but that the blacktopped portion upon which the Brannen automobile was traveling is approximately ten feet wide. The testimony also, is to the effect that there was actually no substantial difference in the appearance of the actual surface of the shoulder for several months, the occupants of the Brannen automobile having used it as a turning lane for quite some time.
In his Reasons for Judgment, the lower court stated as follows, to-wit:
“The shoulder involved in this suit is something more than the ordinary shoulder along the side of a highway. It is a hard surfaced strip ten feet wide and actually suitable for travel. While it is undoubtedly designed for emergency stops, it is equally well adapted to the use Brannen was making of it, that is, for slowing down prior to making a right turn rather than slowing down on a high speed travel lane for this purpose. In the absence of any statute, rule or regulation to the contrary, it is impossible’ to find negligence in such action. Moreover, there is nothing in the record to show that Brannen could reasonably have foreseen the possibility of injury to another resulting from such act, and this appears to be the test laid down by the jurisprudence on the question of actionable negligence in such cases. See Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2, Sec. 899; Teche Lines v. Bateman [162] Miss. [404], 139 So. 159; Wheat v. Teche Lines [181] Miss. [408] 179 So. 553. He had been executing this precise maneuver regularly for several weeks. There had been no change in the nature or appearance of the shoulder so far as he and the witness Kerr could determine, or so far as the evidence shows.
“Finding no negligence on the part of Brannen, there is judgment rejecting plaintiff’s demands.”
*331 The appellant urges that the judgment of the District Court is manifestly erroneous on several grounds. Appellant’s first argument is based upon the fact that the Bran-nen automobile drove between 100 and 150 feet along the shoulder of the road and at an initial speed of approximately 25 to 30 miles per hour.
Appellant urges that this is a violation of the Louisiana Regulatory Act, LSA-R.S. 32:235, subd. B, as follows, to-wit:
“Except as otherwise provided in this Section, the driver of a vehicle intending to turn to the right at an intersection shall approach such intersection in the lane for traffic nearest the right hand side of the highway, and in turning shall keep as closely as practicable to the right hand edge of the highway, * * *”
The purpose of this provision is to require the operator of an automobile on two lane highways to keep out of the left or approaching lane of travel when turning to the right, and on four lane highways to turn so as not to interfere with following traffic in the left lane. It was never intended to prohibit a motorist from parking on the shoulder or using it temporarily as was done in the present case. The ten foot hard surfaced shoulder was constructed as an additional safety area and could be used for that purpose by a motorist. By using it for a right hand turn the driver completely cleared the right lane of the highway for following traffic. The Brannen automobile was merely transferred one lane further toward the right in the “lane” that is the shoulder. There was no violation of the above law and therefore the cases cited by the appellant are not apposite.
Plaintiff next argues that it is common knowledge and the jurisprudence of other states shows that automobiles driven at a relatively high speed will cause rocks to fly and that it is a duty on persons travel-ling on highways to exercise reasonable caution to prevent injury from flying rocks. Appellant argues that the driver of the Brannen automobile knew the condition of the shoulder of the road and that condition was such that entering it at the speed which he did was unreasonable and that he did or should have known that the flying gravel or rocks caused by a combination of his speed and the quantity of the gravel on the shoulder could have caused the injury that did in fact occur. In support of this argument, the plaintiff has cited two cases: Teche Lines, Inc. v. Bateman, 162 Miss. 404, 139 So. 159, and Wheat v. Teche Lines, Inc., 181 Miss. 408, 179 So. 553.
Plaintiff urges that the statement of the court in Teche Lines, Inc. v. Bateman, is applicable to the case at bar to-wit :
“ * * * It is well known that cars proceeding at a high rate of speed on gravel roads throw gravel by reason of the force of the car striking the gravel, or by reason of the suction of the car; * * *. Every person driving a motor vehicle upon public highways is under duty to every other person traveling such highway to exercise reasonable care and caution to prevent injury and to operate the motor vehicles in accordance with statutes prescribing the rights and duties of persons upon such highways.” [162 Miss. 404, 139 So. 161.]
The appellant also urges that the driver of the Brannen automobile violated LSA-Revised Statute 32:227, particularly that portion quoted as follows, to-wit:
“In addition to the specific speed limitations of this chapter, no person shall operate any vehicle upon the highways of this state at other than a reasonable and proper speed under the circumstances, or at a speed endangering the person or property of others.”
The above cited cases are not apposite. They are factually different. In the present case, we are not concerned with a gravel road nor a car traveling at a high rate of speed.
*332 Brannen was not violating LSA-R.S. 32:227, but on the contrary was complying with specific speed limitations and operating at “a reasonable and proper speed under the circumstances * * * ” and at a speed not contemplated or foreseeable as “endangering the persons or property of others.”
Counsel for appellant also relies upon the law as stated in Section 599 of Blashfield’s Encyclopedia of Law & Practice, particularly the following:
“Motorists should not pass others at such a rate of speed as to pick up gravel or small rocks with their tires and with such force as to hurl them against others on the highway causing injury, but whether such negligence is actionable seems to rest on whether the throwing of a stone and the injury could have been reasonably anticipated or foreseen as a natural and probable consequence.”
The “throwing” of “a stone” as in the case at bar could not “have been reasonably anticipated or foreseen as a natural and probable consequence” of Brannen temporarily travelling on the ten foot hard top shoulder in order to clear the main right hand lane of the highway so that he might make an intended right turn, as the shoulder of the road did not give the appearance of having excessive amounts of loose gravel, in fact, there was no more, apparently, than ordinarily was seen on this highway and his speed was reasonable and prudent under the facts, circumstances, and conditions.
We do not find the judgment of the District Court to be manifestly erroneous. It is correct and is affirmed.
Judgment affirmed.