# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01675-SCT

*TWIN COUNTY ELECTRIC POWER ASSOCIATION, MICHAEL LANG AND JEREMY FULLER*

*v.*

*GWENEVERE McKENZIE*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/27/2000 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BRADLEY FAREL HATHAWAY |
| | WILLIAM C. TROTTER |
| ATTORNEYS FOR APPELLEE: | THOMAS T. DUNBAR |
| | EDWARD BLACKMON, JR. |
| | JONATHAN B. FAIRBANK |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 05/09/2002 |
| MOTION FOR REHEARING FILED: | 5/30/2002; denied 8/15/2002 |
| MANDATE ISSUED: | 8/22/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Twin County Electric Power Association (TCEPA) and two of its employees, Michael Lang (Lang) and Jeremy Fuller (Fuller), appeal from an adverse judgment of $1,995,000 entered by the Humphreys County Circuit Court upon a jury verdict for Gwenevere McKenzie (McKenzie). McKenzie sought recovery for damages sustained in a one-car accident allegedly caused by the negligence of Lang and Fuller. McKenzie cross-appeals the circuit court's refusal to allow the jury to consider punitive damages.

¶2. We find that there is no evidence from which the jury could reasonably infer that the negligence of the two TCEPA truck drivers, even if admitted, proximately caused McKenzie's accident. Accordingly, we

reverse and render the judgment entered on the jury verdict against the defendants.

## FACTS

¶3. McKenzie was injured in a one-car accident on Gooden Lake Road near Belzoni, Mississippi, on April 5, 1997. McKenzie, a forty-year-old certified nursing assistant, was returning home from visiting a patient. According to McKenzie, she was headed east on Gooden Lake Road when two TCEPA trucks passed her at a speed of approximately 70 mph, then veered sharply in front of her at a close distance. McKenzie testified that as the trucks passed her, they hit a pothole, splashing muddy water on her windshield and reducing her visibility. She then hit the same pothole, lost control of her GEO Tracker, and ran off the road. McKenzie was ejected from the soft roof of her vehicle, and she landed on a fence in a nearby pasture.

¶4. The speed limit on Gooden Lake Road is 55 mph. It was later determined that Lang was driving a half-ton pickup truck and Fuller a TCEPA bucket truck on Gooden Lake Road the morning of the accident. Both Lang and Fuller testified that they would have been eastbound on Gooden Lake Road about 10:30 a.m., the approximate time of the accident.

¶5. It rained the night before McKenzie's accident. The pavement itself was dry, but there was water standing in the potholes on Gooden Lake Road. The condition of the road at the scene of the accident was contested at trial, as was the speed of the TCEPA trucks and their direction at the time of the accident. Chief Deputy Sheriff Zelie Shaw, who investigated the accident, testified from his accident report that McKenzie told him twice at the scene of the accident that the trucks were traveling west, the opposite direction from McKenzie, at the time of the accident. Deputy Shaw also stated that when he spoke with McKenzie, she was alert and articulate. McKenzie testified that Deputy Shaw's report is incorrect. Deputy Shaw's account was supported by the testimony of Quincy Bell, the only eyewitness to the accident, who testified that the trucks were going west at the time of the accident at a speed of approximately 55 mph. Lang testified that he obeys traffic laws "all the time," whether he is working or not. He stated that he had a car accident when he was twenty years old and that he never drives fast anymore.

¶6. McKenzie testified that the road in the area of the accident was very deteriorated, having at least seven or eight holes. Charles Van Allen, a county road foreman, testified that he was instructed to repair the area in question just days after the accident and that he repaired six to seven holes. Deputy Shaw testified that he walked up and down the road the morning of the accident and that he saw only one pothole. Jean Braswell, who lives on Gooden Lake Road near the scene of the accident, testified that the numerous potholes described by McKenzie did not exist at the time of the accident and that there was only one pothole. Quincy Bell testified that there was only one pothole in the vicinity where the accident occurred.

¶7. The injuries sustained by McKenzie as a result of the accident included a shattered left femur, two fractured right ribs, and five fractured vertebrae in her lower back. McKenzie underwent surgery to repair her femur, and a rod was inserted into her leg. She subsequently reported to her treating physicians back pain and leg pain. In October or November of 1997, McKenzie's orthopaedic surgeon released her to return to work. McKenzie informed her employer, Sta-Home Health Agency, that she was ready to return to work with a full patient load. However, McKenzie's employment with Sta-Home was terminated in November 1997 prior to her return to work. According to Sta-Home, government cutbacks resulted in a reduction of StaHome's work force and because McKenzie was not available for work at the time, StaHome determined it could no longer hold the job open for her.

¶8. At trial, it was McKenzie's testimony that she was unable, as a result of her injuries, to perform the duties required of her as a nurse's aide such as bending and lifting patients. Her testimony was supported to some extent by that of her physicians. Dr. Mack Gorton, McKenzie's internist, testified that McKenzie's injuries rendered her unable to lift more than 20 pounds and that this disability would limit her abilities as a nurse's aide. Dr. Fred Sandifer, an orthopaedic surgeon who treated McKenzie, assigned her an 8% impairment rating and testified that the restricted movement in McKenzie's hip due to the accident is likely to adversely affect her ability to perform the duties required of a nurse's aide. Dr. William Geissler, another orthopaedic surgeon who treated McKenzie, placed no restrictions on her activities and testified that McKenzie was ready to return to work. McKenzie testified that she had tried to find a job with other home health agencies, but that they were not hiring. McKenzie filed suit on December 19, 1997, against TCEPA, unnamed TCEPA employees, and Humphreys County. By amended complaint, filed August 17, 1998, McKenzie named Fuller and Lang and demanded $2 million in compensatory damages as well as punitive damages. Her complaint contained allegations of gross negligence against Fuller, Lang, and Humphreys County. McKenzie settled her claim with the County prior to trial for $5,000.

¶9. The claims against TCEPA, Fuller, and Lang (hereafter collectively referred to as "TCEPA") proceeded to trial before Circuit Judge Jannie M. Lewis and a jury. At the close of McKenzie's case-in-chief, the trial court directed a verdict in favor of TCEPA on McKenzie's claim that Lang and Fuller were negligent in failing to honk their horns as they passed her and on her claim the Lang and Fuller should not have passed her in a legal passing zone. The trial court refused to direct a verdict on McKenzie's claims that Lang and Fuller were negligent in speeding and in veering sharply in front of her as they completed their pass.

¶10. The jury returned a verdict for McKenzie in the amount of $2,247,921. The trial court refused to allow the jury to consider the question of punitive damages. On August 18, 2000, the court entered judgment on the jury's verdict, limiting the judgment to $2,000,000, the amount requested in McKenzie's complaint, pursuant to Miss. R. Civ. P. 54(c).

¶11. TCEPA, Lang, and Fuller timely filed a Motion for Judgment Notwithstanding the Verdict, for New Trial, or, alternatively, for Remittitur. The trial court denied TCEPA's post-trial motion, but revised the final judgment to $1,995,000. This reduction was a $5,000 setoff for the settlement paid into the court by Humphreys County.

¶12. TCEPA timely filed a notice of appeal, and McKenzie thereafter filed a notice of cross-appeal. TCEPA raises the following issues:

> **I. WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF TCEPA, OR, IN THE ALTERNATIVE, WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**
>
> **II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ACCEPT INTO EVIDENCE THE ACCIDENT REPORT.**
>
> **III. WHETHER THE TRIAL COURT ERRED BY EXCLUDING A DOCUMENT FROM McKENZIE'S PERSONNEL FILE.**
>
> **IV. WHETHER THE TRIAL COURT ERRED BY PERMITTING McKENZIE TO PROVE MEDICAL EXPENSES BY INCOMPETENT PROOF.**

**V. WHETHER THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE PHOTOGRAPHS OF GOODEN LAKE ROAD.**

**VI. WHETHER THE TRIAL COURT ERRED IN ITS RULINGS REGARDING DR. GORTON'S TESTIMONY.**

**VII. WHETHER THE TRIAL COURT ERRED BY PERMITTING McKENZIE'S EXPERT TO RENDER AN OPINION ON THE NET PRESENT VALUE OF LOST EARNINGS USING FALSE ASSUMPTIONS.**

**VIII. WHETHER THE JURY WAS IMPROPERLY INSTRUCTED REGARDING THE ALLOCATION OF FAULT TO THE COUNTY.**

**IX. WHETHER THE TRIAL COURT ERRED BY REFUSING INSTRUCTION D-7.**

**X. WHETHER THE TRIAL COURT ERRED BY MODIFYING INSTRUCTION D-6.**

**XI. WHETHER THE TRIAL COURT ERRED BY MODIFYING INSTRUCTION D-10.**

**XII. WHETHER THE VERDICT WAS EXCESSIVE AND INFLUENCED BY BIAS, PREJUDICE OR PASSION.**

**XIII. WHETHER THE TRIAL COURT ERRED IN ALLOWING McKENZIE TO EXERCISE FOR CAUSE CHALLENGES.**

The sole issue raised by McKenzie on cross-appeal is:

**XIV. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE JURY TO CONSIDER PUNITIVE DAMAGES.**

**DISCUSSION**

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF TCEPA, OR, IN THE ALTERNATIVE, WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.**

¶13. The standard of review for a denial of a directed verdict and a motion for a judgment notwithstanding the verdict is the same:

Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Alpha Gulf Coast, Inc. v. Jackson*, 801 So. 2d 709, 720 (Miss. 2001) (citing *Steele v. Inn of*

*Vicksburg, Inc.*, 697 So. 2d 373, 376 (Miss.1997)).

¶14. TCEPA contends that the proof was insufficient as a matter of law on the issue of proximate cause. Again, the only acts of negligence presented to the jury were the excessive speed of the two trucks and their "veering" in front of McKenzie as they completed their pass. TCEPA insists that McKenzie presented no evidence that these alleged acts of negligence had a causal relation to the injury. We agree.

¶15. This Court has stated that negligence alone is not sufficient to permit recovery. *Burnham v. Tabb*, 508 So. 2d 1072, 1077 (Miss. 1987); *Pargas of Taylorsville, Inc. v. Craft*, 249 So. 2d 403, 406 (Miss. 1971). Rather, it must be shown that the injuries were caused by the complained of negligence. *Id.* Though a plaintiff need not rely solely upon direct evidence to prove a causal connection between negligence and injury,

> But even where negligence is shown that fact alone affords no basis for the recovery of damages unless it further appears from *direct evidence or reasonable inference* that such negligence proximately contributed to the damage.

*Barkley v. Miller Transporters, Inc.*, 450 So. 2d 416, 418 (Miss. 1984) (quoting *Tombigbee Elec. Power Ass'n v. Gandy*, 216 Miss. 444, 452, 62 So. 2d 567, 569 (1952) (emphasis added)).

¶16. Even assuming Lang and Fuller were negligent by speeding or failing to return to the eastbound lane at a safe distance from McKenzie's vehicle, the record is absolutely devoid of evidence from which any inference can be drawn causally connecting either of the alleged acts of negligence with McKenzie's accident. McKenzie testified that she lost control of her vehicle when she struck a pothole - a pothole she knew was there but could not see at the moment because of the reduced visibility. McKenzie failed, however, to produce evidence that the excessive speed of the trucks or their alleged veering in front of her in any way contributed to the amount of water on her windshield. Stated otherwise, McKenzie failed to show that her reduced visibility was due to the defendants' negligence or anything other than an occurrence incident to normal travel on roadways after rainfall in general.

¶17. McKenzie claimed that she was traveling 45 mph in a 55 mph speed zone when she was overtaken by the two TCEPA trucks in a legal passing zone traveling at 70 mph. However, McKenzie admitted that she was running late to see her scheduled patients. It is noteworthy that in prior statements, McKenzie claimed that the two trucks were proceeding west bound at the time of the accident. As the trucks passed her, they remained completely within their designated lane of travel and made no contact with her vehicle. According to McKenzie, when the trucks moved in front of her, they both struck the same pothole and splashed dirty rainwater from that pothole onto her windshield. McKenzie, who testified that she was blinded by the water, never applied her brakes but instead simply removed her foot from the gas. After the first truck passed and splashed dirty water on her windshield, McKenzie testified that she turned on her wipers and attempted to keep driving. McKenzie testified that after the second truck passed and hit the *same* pothole, again splashing muddy water onto her windshield. Amazingly, McKenzie testified that she continued to operate her vehicle by looking out the driver's side window. She testified that she then hit the *same* pothole which the two trucks hit, lost control and wrecked. Chief Deputy Shaw confirmed that there was only one pothole at this location where the accident occurred. McKenzie's account is inconsistent with matters of common knowledge, human experience, and defies Newton's laws of motion and physics.[1] McKenzie's vehicle would have to have been stationary to have been splashed with water by both trucks proceeding one behind the other at 70 mph on the roadway. Simply put, the facts as alleged by McKenzie are a

physical impossibility.

¶18. McKenzie offered no evidence from which the jury might infer that her vision was any more impaired by the alleged negligence of the TCEPA drivers than had such acts not occurred. In fact, McKenzie testified that but for striking the pothole, which she knew in advance was there, she would not have wrecked. More importantly, she testified that even had Lang and Fuller been traveling at the posted speed limit, the same events were just as likely to have occurred. McKenzie admitted that she knew that when driving after a rain there is a likelihood of having your windshield splashed with water by other motorists.

¶19. Equally as problematic for McKenzie is the testimony of Quincy Bell, the only eye witness to the accident. Bell observed the incident from a nearby front yard. Bell testified that the two west bound TCEPA trucks, driving within the posted speed limit, had proceeded past the area several minutes earlier than when McKenzie appeared and the actual accident occurred. He testified further that he heard a noise that sounded like a vehicle striking a pothole and as he looked, he saw McKenzie's vehicle speeding and out of control.

¶20. McKenzie relies on *Teche Lines, Inv. v. Bateman*, 162 Miss. 404, 139 So. 159 (1932). In that case, the plaintiff was struck in the eye by a rock hurled by a bus traveling in the opposite direction. The jury returned a verdict for the plaintiff, and the bus company appealed. The bus company argued that, though there was evidence at trial that the bus was speeding, the speed of the bus had no causal relation to the injury. *Id.* at 160. This Court disagreed, stating:

> It is well known that cars proceeding at a high rate of speed on gravel roads throw gravel by reason of the force of the car striking the gravel, or by reason of the suction of the car.... The greater the rate of the speed the more violent the hurling of such gravel or rocks becomes.... [A] person traveling on a gravel highway is bound to know that missiles are liable to be hurled with more or less violence according to the speed and weight of the car.

*Id.* at 161. However, noticeably absent in the Court's opinion is any such factual evidence presented at trial upon which this statement could be based. The above comments appear to be nothing more than pure speculation. Even assuming such a conclusion could be drawn from the evidence presented in *Teche Lines,* McKenzie definitely presented no such evidence in the case at bar.

¶21. McKenzie also relies on *Barkley v. Miller Transporters, Inc.*, 450 So. 2d 416 (Miss. 1984). That case involved a motorist, Barkley, who was forced off a wet road when another driver lost control of his truck while passing Barkley. *Id.* at 417. Barkley drove off the road to avoid the truck. *Id.* She never applied her brakes, and no contact occurred between the two vehicles. *Id.* This Court held that the trial court correctly granted Barkley a peremptory instruction on the issue of liability. *Id.* at 419-20. The evidence showed that the truck driver had been alerted to the slippery road and, as a result of his failure to exercise care in passing Barkley, lost control of his truck. *Id.* at 420.

¶22. McKenzie argues that, just as the plaintiff in *Barkley*, her ability to negotiate the road was severely limited by the TCEPA drivers' "failure to reasonably control their vehicles." McKenzie's reliance on *Barkley* is misplaced. Barkley was forced off the road when the defendant negligently lost control of his truck. Here however, there is no evidence that either TCEPA driver lost control of their vehicles as in *Barkley*. McKenzie continued to attempt to drive her vehicle when she could not see through the windshield by looking out the window. Shortly thereafter McKenzie's vehicle left the road when she struck

the same pothole. There is no evidence in the record causally connecting McKenzie's accident to the speed of the trucks. Again, even McKenzie testified that the accident would have occurred even had the trucks been going the posted speed limit. Regarding the trucks veering in front of her, McKenzie testified only that this caused her to slow down, not to lose control of her vehicle or to strike the pothole. McKenzie cannot complain of the fact that the trucks passed her. The area in which the accident occurred was a legal passing zone, and TCEPA was granted a directed verdict on that issue, which McKenzie has not appealed.

¶23. The heretofore referenced phrase from *Teche Lines* is clearly either speculation by the Court without supporting evidence or dicta. Regardless, such language extends the doctrine of negligence beyond that recognized by most jurisdictions. To that degree *Teche Lines* is overruled. In *Lindberg v. Gilbert*, 190 N.E.2d 105 (Mass. 1963), where the defendant got into his vehicle and "spun the wheels violently, and started up very fast" causing a rock to be thrown which struck the plaintiff causing injuries, that court affirmed a directed verdict for the defendant stating, "[t]his was an unusual happening and the defendant was not bound to guard against what was only remotely likely to occur." *Id.* at 106. In *Allied Fid. Ins. Co. v. Lamb*, 361 N.E 2d 174 (Ind. Ct. App. 1977), a case factually similar to the case at bar, the plaintiff was passed by an unidentified semi-tractor trailer truck and a rock was thrown through plaintiff's windshield striking, causing injuries and ultimately death to a child passenger. The truck driver proceeded on to his destination unaware of an accident. A jury verdict was returned in favor of the plaintiff and the trial court denied a directed verdict which was appealed by the insurance carrier arguing that the plaintiff's evidence was legally insufficient to support a prima facie case of negligence against the truck driver. The appellate court agreed stating:

> There is no indication that the driver could have or should have reasonably anticipated or foreseen that such an accident would happen under the circumstances. . . . In essence, there is absolutely no proof in this case that the driver acted negligently or that his actions if negligent, proximately caused the injuries. We must find that there was a total absence of evidence on two essential elements of negligence, namely breach and proximate cause. . . . "

*Id.* at 181. Here, McKenzie has presented evidence which at best is only speculative and remotely possible. Her burden of proof is much greater and she has wholly failed to carry that burden. We find that McKenzie failed to establish legal causation between the acts to the two TCEPA truck drivers and her accident which her own testimony reflects would not have occurred but for her striking the pothole. Nor has McKenzie shown that the events as testified to were foreseeable.

¶24. Generally a case should not be removed from a jury's consideration if the facts favorable to the party adversely affected taken together with all reasonable inferences therefrom, it can be said that a rational jury could find in his favor. *Read v. Southern Pine Elec. Power Ass'n*, 515 So. 2d 916, 919 (Miss.1987). Here, the evidence is legally insufficient to support a prima facie case of negligence against the operators of the two trucks. In fact, McKenzie's version of events makes the accident physically impossible to have occurred as she claimed. This Court, however, has set forth the exception to the general rule and adopted the standard for a directed verdict where the facts of an alleged accident fail to support a plaintiff's version and the verdict of the jury is contrary to the overwhelming weight of the evidence:

> Where evidence is so contrary to the probabilities when weighed in the light of common knowledge,

common experience, and common sense that impartial, reasonable minds cannot accept it other than as clearly an improbability, it will not support a verdict."

*Elsworth v. Glindmeyer*, 234 So. 2d 312, 318-319 (Miss. 1970), quoting *Teche Lines, Inc. v. Bounds*, 182 Miss. 638, 649; 179 So. 747-749 (1938). In *Yazoo & M.V. R.R. Co. v. Skaggs*, 181 Miss. 150, 179 So. 274, 278 (1938), this Court stated:

As this court has frequently said, verdicts and judgments in civil actions must be based on the probabilities of the case, not on possibilities; and a verdict, although it is treated with great respect, has no force to convert a possibility into a probability. . . ."

In *Elsworth* this Court also stated:

It is enough if the event found was so improbable, according to ordinary operation of physical forces, or was so overwhelmingly disproved by credible witnesses, as to compel the conviction that the jury either failed to weigh the evidence carefully, or drew unwarranted inferences, or yielded to a partisan bias."

234 So. 2d at 319 (quoting *Spiro v. St. Louis Transit Co.*, 76 S.W. 684, 688 (Mo. Ct. App 1903). Here, the most that can be said for McKenzie's version of the evidence is that it only could amount to a mere possibility, never a probability.

**CONCLUSION**¶25. There was simply no evidence from which the jury could reasonably infer that the negligence of the TCEPA drivers, even if admitted, proximately caused McKenzie's accident. Because McKenzie's proof was insufficient as a matter of law on this issue, the judgment against the defendants must be reversed and rendered. Because this issue is dispositive, we need not address the remaining thirteen issues raised by TCEPA nor the issue raised by McKenzie on cross-appeal. For these reasons, we reverse the judgment of the Humphreys County Circuit Court, and we render judgment here that Gwenevere McKenzie take nothing and that her complaint and this civil action are finally dismissed with prejudice.

¶26. **REVERSED AND RENDERED.**

**PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. McRAE, P.J., EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

1. "Law of Motion - - a statement in dynamics: a body at rest and a body in motion remains in uniform motion in a straight line unless acted upon by an external force- - called also *Newton's first law of motion*." Webster's Third New World International Dictionary, 1280 (1976 ed).